ACCEPTED
15-25-00047-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/11/2025 3:58 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00047-CV

IN THE
15th COURT OF APPEALS
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/11/2025 3:58:57 PM
CHRISTOPHER A. PRINE
Clerk

In the Interests of R.G.A.C.L.C, a Child

On appeal from the 301ST District Court
of Dallas County, Texas

## APPELLANT BRIEF

## IDENTITY OF THE PARTIES

1.    Appellant and Petitioner at the trial court is Christopher Graham hereinafter referred to as "Graham."

2.    Appellee and Respondent at the trial court is Tiffany Fawcett hereinafter referred to as "Fawcett." It is unknown whether Respondent is represented by counsel.

3.    Appellee and intervening party at the trial court is the Attorney General of Texas Child Support Division. They are represented by the attorney Morgan Bridgewater, 2201 Main Street, Ste. 1250, Dallas, Texas 75201.

## TABLE OF CONTENTS

1. Identity of the Parties      1

2. Table of Contents      1

3. Index of authorities      9

4. Statement of the case      13

5. Statement regarding oral arguments      16

6. Issues presented      16

     a. Res judicata bars the relitigation of claims that were actually litigated or that could have been litigated in a prior proceeding arising from the same transaction, where: (1) there was a final judgment; (2) the parties are the same; and (3) the subsequent suit is based on the same claims. Was Appellee entitled to obtain a subsequent protective order in Dallas County against Appellant, when Appellant Graham had already secured a final protective order against Appellee approximately three months earlier, involving the same parties and arising from the same July 5, 2024 assault incident that had already been adjudicated in the prior proceeding?

     b. An applicant for an ex parte protective order is required to sign the application under oath, affirming that the facts and circumstances stated therein are true to the best of the applicant's knowledge and belief. Was the application for the ex parte protective order and the trial court's subsequent granting of that application by the associate

judge invalid where the application lacked the required sworn signature of the applicant?

c. When an application seeks a protective order for a child subject to the continuing exclusive jurisdiction of a court, it must include either: (1) a copy of each court order affecting conservatorship, support, or possession of and access to the child; or (2) a statement that the relevant orders are unavailable to the applicant and will be filed with the court before the hearing. Was Appellee's application for protective order, and the associate judge's ruling granting that application, invalid where the application included neither a copy of the relevant conservatorship orders nor a sworn statement indicating their unavailability and intent to file them before the hearing?

d. Texas law expressly requires that, before imposing sanctions, a trial court must hold a hearing to give the affected party an opportunity to be heard. Did the trial court err by imposing death penalty sanctions on Appellant without first conducting a sanctions hearing, as required by law?

e. Texas law requires that, before holding a sanctions hearing, the court must provide notice to the affected party. This notice must also clearly identify the specific conduct alleged to warrant sanctions. Did the trial

court err by imposing death penalty sanctions and dismissing Appellant's case without providing notice of a sanctions hearing or specifying the conduct it deemed sanctionable?

f. When imposing sanctions, a court must clearly explain its decision, including: (1) a description of the sanctionable conduct, (2) the relationship between that conduct and the sanctions imposed, and (3) the necessity for the severity of the sanctions. Did the trial court err by issuing a sanctions order that dismissed Appellant's case, where the order failed to: (1) describe the sanctionable conduct; (2) explain the relationship between the conduct and the sanctions imposed; or (3) justify the severity of the sanctions?

g. A dismissal order should be limited to the procedural act of dismissing the case and must not include determinations on the merits or impose substantive terms that affect the rights of the parties. When a dismissal order extends beyond its scope, such as by dictating future conduct or modifying existing legal rights, it constitutes reversible error. Was the trial court's dismissal order invalid where it included rulings beyond the mere dismissal of the case, thereby affecting the substantive rights of the parties?

h. A trial court may exercise its inherent power to impose sanctions only when necessary to deter, alleviate, or address bad faith abuse of the judicial process. Did the trial court err by imposing death penalty sanctions and dismissing Appellant's case without holding a hearing or entering any evidence to determine whether Appellant had filed any motion in bad faith or had otherwise abused the judicial process?

i. Under Texas law, sanctions must be "just," and dismissal is considered an extreme measure, reserved only for the most egregious cases. Did the trial court err by imposing death penalty sanctions and dismissing the case where: (1) no notice of intent to dismiss was given; (2) no reasons for dismissal were stated in any notice; (3) Appellant received no warning of court's intended dismissal; and (4) no lesser sanctions were imposed before resorting to the most extreme sanction?

j. The legal standard for imposing death penalty sanctions requires a four-part analysis: (1) the sanction must be directly related to the offensive conduct; (2) the sanction must not be excessive; (3) the court must consider and rule out lesser sanctions before dismissal; and (4) the party's conduct must justify a presumption that its claims or defenses lack merit. Did the trial court err by imposing death penalty

sanctions against Appellant where: (1) no specific offensive conduct by Appellant was identified; (2) dismissal was imposed as the first and only sanction; (3) the court failed to consider lesser sanctions; and (4) Appellant was actively pursuing his claims, and no act was committed nor even alleged that would justify a presumption his claims lacked merit?

k. A trial court may not dismiss a case based on alleged abuse of the legal process specifically pleadings abuse without first conducting a hearing and entering evidence to support a showing that a pleading, motion, or other paper was both groundless and filed in bad faith, for harassment, or with knowledge that it was false. Due process requires a factual basis and an opportunity to be heard before imposing such a severe sanction. Did the trial court err by dismissing Appellant's case on the grounds of alleged pleading abuse when no hearing was held and no evidence was ever entered to substantiate the claim?

7. Statement of facts          19

8. Summary of the argument        24

9. Arguments and Authorities      30

    a. Res judicata bars Appellee's October 15, 2024 application for a protective order and TRO because it is based on the same July 5, 2024

incident that was already litigated to final judgment in the 231st District Court of Tarrant County. The matter cannot be relitigated between the same parties under established law.    30

b. Appellee's application for ex parte protective order was invalid because it lacked the applicant's sworn signature, as required by Texas law. Without verification under oath, the application did not meet the statutory requirements and could not support the issuance of a valid order.    36

c. Appellee's application for ex parte protective order was invalid because it failed to comply with Tex. Fam. Code § 82.007, which requires either a copy of the relevant conservatorship orders or a sworn statement explaining their unavailability. Appellee's application included neither, rendering it legally defective.    36

d. The trial court's dismissal of Appellant's case was erroneous because no hearing was held prior to imposing sanctions. Texas law requires a sanctions hearing to ensure due process before such extreme measures are taken.    38

e. The trial court's dismissal of Appellant's case was erroneous because no proper notice was given prior to the sanctions. Due process

requires clear notice identifying the alleged misconduct before any dismissal can occur.          40

f.  The trial court's dismissal was erroneous because the order failed to clearly explain its reasoning, as required by law. A valid sanctions order must describe the conduct at issue, connect it to the sanction imposed, and justify the severity of the penalty.          41

g.  The trial court's dismissal was erroneous because the order included rulings beyond the scope of dismissal. A dismissal order must be limited to ending the case procedurally and cannot impose substantive determinations affecting the parties' rights.          43

h.  The trial court erred in dismissing Appellant's case without holding a hearing or entering any evidence to determine whether Appellant had acted in bad faith or abused the judicial process. There was no showing, and in fact, evidence to the contrary, that Appellant engaged in any abusive conduct, making the court's reliance on such grounds improper and legally unfounded.          44

i.  The trial court erred in dismissing Appellant's case because the sanctions imposed were unjust and excessive. Dismissal is the most severe sanction and should only be used when lesser measures have been considered and found inadequate, which did not occur here.  47

j.  The trial court erred in dismissing Appellant's case because it failed to properly apply the required four-part test for death-penalty sanctions. The court did not identify any specific misconduct, imposed dismissal as the first sanction, failed to consider lesser sanctions, and had no basis to presume Appellant's claims lacked merit.          49

k.  The trial court erred in dismissing Appellant's case on the grounds of abusive filing or abuse of the legal process. Under Texas Rule of Civil Procedure 13, sanctions require a showing that a pleading was both groundless and filed in bad faith, for harassment, or with knowledge of its falsity. Here, Appellant committed no pleadings abuse, no evidence was entered to support such a finding, and none of Appellant's filings were sanctionable or justified dismissal.          58

10.  Prayer          61

11.  Appendix          64

**INDEX OF AUTHORITIES**

a)  Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 573 (Tex.2018)

b)  Alvarado v. Magic Valley Elec. Co-op, Inc., 784 S.W.2d 729, 733 (Tex.App.—San Antonio 1990, writ denied)

c)  American Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex.2006).

d) Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d 507, 516 (Tex.2014)

e) Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex.1996);

f) Bedding Component Manufacturers, Ltd. v. Royal Sleep Prods., 108 S.W.3d 563, 564 (Tex.App.—Dallas 2003, no pet.)

g) Bisby v. Dow Chem. Co., 931 S.W.2d 18, 21 (Tex.App.—Houston [1st Dist.] 1996, no writ)

h) CHRISTUS Health Gulf Coast v. Carswell, 505 S.W.3d 528, 540 (Tex. 2016)

i) Cire v. Cummings, 134 S.W.3d 835, 843 (Tex. 2004)

j) Citizens Ins. v. Daccach, 217 S.W.3d 430, 449 (Tex.2007)

k) Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex.1992)

l) Compania Financiara Libano, S.A. v. Simmons, 53 $.W.3d 365, 367 (Tex.2001)

m) Davila v. World Car Five Star, 75 S.W.3d 537, 544 (Tex.App.—San Antonio 2002, no pet.)

n) Dow Chem. Co. v. Francis, 46 S.W.3D 237, 241 (Tex. 2001).

o) Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–242 (Tex. 1985).

p) Durbin v. Culberson Cty., 132 S.W.3d 650, 656 (Tex. App.—El Paso 2004, no pet.);

q) Elliott v. Elliott, 797 S.W.2d 388, 392 (Tex. App.—Austin 1990, no writ)

r) El Paso Nat Gas. Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999).

s) <u>Engelman Irrigation Dist. v. Shields Bros.</u>, 514 S.W.3d 746, 750 (Tex.2017)

t) <u>Ex Parte Chambers</u>, 898 S.W.2d 257, 259 (Tex. 1995)

u) <u>Ex Parte Rosser</u>, 899 S.W.2d 382, 385 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding)

v) <u>Falk & Mayfield L.L.P. v. Molzan</u>, 974 S.W.2d 821, 827 (Tex.App—Houston [14th Dist. ] 1998, pet. denied)

w) <u>Garcia-Marroquin v. Nueces Cty. Bail Bond Bd.</u>, 1 S.W.3d 366, 379 n.8 (Tex.App.—Corpus Christi 1999, no pet.

x) <u>Graham Cent. Station Inc. v. Pena</u>, 442 S.W.3d 261, 263 (Tex. 2014).

y) <u>GTE Comms. Sys. v. Tanner</u>, 856 S.W.2d 725, 729-30 (Tex. 1993)

z) <u>Hallco Tex., Inc. v. McMullen Cty.</u>, 221 S.W.3d 50, 58 (Tex.2006)

aa) <u>Horizon Health Corp. v. Acadia Healthcare Co.</u>, 520 S.W.3d 848, 884 (Tex. 2017)

bb) <u>HMC Hotel Properties II L.P. v. Keystone-Tex. Prop. Holding Corp.</u>, 439 S.W.3d 910, 913 (Tex. 2014).

cc) <u>Igal v. Brightstar Info. Tech. Grp.</u>, 250 S.W.3d 78, 86 (Tex.2008).

dd) <u>In re Acceptance Ins.</u>, 33 S.W.3d 443, 451 (Tex. App.—Fort Worth 2000, orig. proceeding)

ee) <u>In re Bennett</u>, 960 S.W.2d 35, 40 (Tex. 1997)

ff) <u>In re National Lloyds Ins.</u>, 507 S.W.3d 219, 226 (Tex.2016)

gg) <u>Johnson v. Fourth Court of Appeals</u>, 700 S.W.2d 916, 917 (Tex. 1985)

hh) <u>Koslow's v. Mackie</u>, 796 S.W.2d 700, 703-04 & n.1 (Tex.1990).

ii) <u>KB Indus. v. Pro-Line Corp.</u>, 938 S.W.2d 440, 442 (Tex.1997)

jj) Kutch v. Del Mar Coll., 831 S.W.2d 506, 510 (Tex.App.—Corpus Christi 1992, no writ).

kk) Liles v. Contreras, 547 S.W.3d 280, 290 (Tex.App.—San Antonio 2018, pet. denied)

ll) Lindley v. Flores, 672 S.W.2d 612, 614 (Tex. App.—Corpus Christi 1984, no writ)

mm) Low v. Henry, 221 S.W.3d 609, 618 (Tex. 2007)

nn) Medical Prot. Co. v. Glanz, 721 S.W.2d 382, 388 (Tex. App.—Corpus Christi 1986, writ ref'd)

oo) Nath v. Texas Children's Hosp., 446 S.W.3d 355, 361 (Tex.2014)

pp) Paradigm Oil, Inc. v. Retamco Oper., Inc., 372 S.W.3d 177, 184 (Tex. 2012)

qq) Plano S&L Ass'n v. Slavin, 721 S.W.2d 282, 284 (Tex. 1986

rr) Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998).

ss) Raw Hide Oil & Gas Inc. v. Maxus Expl. Co., 766 S.W.2d 264, 275-76 (Tex. App.-- Amarillo 1998, writ denied).

tt) R.M. Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 709-10 (Tex.App.—Waco 2008, pet. denied)

uu) Robinson v. Garcia, 5 S.W.3d 348, 351-52 (Tex. App.—Corpus Christi 1999, pet. denied)

vv) Sears, Roebuck & Co. v. Hollingsworth, 293 S.W.2d 639, 642 (Tex. 1956)

ww) Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003)

xx) State & Cty. Mut. Fire Ins. v. Miller, 52 S.W.3d 693, 696 (Tex.2001)

yy) Sterner v. Marathon Oil Co., 767 S.W W.2d. 686, 690 (Tex. 1989).

zz) Taylor v. Taylor, 254 S.W.3d 527, 532 (Tex.App.—Houston [1st Dist.] 2008, no pet.)

aaa)    Tidrow v. Roth, 189 S.W.3d 408, 413 (Tex.App.—Dallas 2006, no pet.)

bbb)    TransAmerican Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991).

ccc)    Travelers Ins. v. Joachim, 315 S.W.3d 860, 866 (Tex.2010)

ddd)    Unifund CCR Partners v. Villa, 299 S.W.3d 92, 97 (Tex.2009)

eee)    Westview Drive Invs. v. Landmark Am. Ins., 522 S.W.3d 583, 613 (Tex.App.—Houston [14th Dist.] 2017, pet. denied

fff) Tex. Civ. Prac. Rem. Code Ch. 9

ggg)    Tex. Civ. Prac. Rem. Code §9.011

hhh)    Tex. Civ. Prac. Rem. Code §10.001

iii)    Tex. Civ. Prac. Rem. Code §10.001(1)-(3)

jjj)    Tex. Family Code Sec. 82.007

kkk)    Tex. Fam. Code Sec. 82.009.

lll)    Tex. Fam. Code 152.202(a)

mmm)    Tex. Fam. Code 157.008(c).

nnn)    Tex R. Civ. Proc. 13

ooo)    Tex. R. Civ. Proc. 296

## STATEMENT OF THE CASE

1.    On July 19, 2024, Graham filed an application for protective order in the 231st District Court in Tarrant County as a result of an assault committed by Fawcett during a custody exchange.  (2d Supp. C.R., 69).

2.      On August 6, 2024, the 231st district court granted a final protective order in favor of Graham and against Appellee Fawcett. (1st Supp. C.R., 18-27)

3.      August 7, 2024, Graham filed his Petition to Modify Parent-Child Relationship for Temporary Restraining Order, Temporary Injunction and Temporary Orders. (1st Supp. C.R., 6)

4.      August 20, 2024, after the temporary orders hearing before the associate judge, the court declined to extend the temporary restraining order and ordered that the previous 2020 final order continue to govern the parties as temporary orders. (1st Supp. C.R., 61)

5.      On September 3 and 30th, 2024, Graham filed his motions for contempt #1 and #2 against Appellee for failure to produce the child and numerous other violations of the 2020 final custody order.   (2d Supp. C.R.,154; 2d Supp. C.R.,159)

6.      On October 15, 2024, after the preliminary hearing for contempt against, Fawcett, Appellee filed an application for ex parte protective order, ex parte temporary restraining order, temporary orders and protective order. (1st Supp. C.R.,73; 2d Supp. C.R.,164-171).

7.      October 15, 2024, the associate judge granted the ex parte temporary restraining order against Appellant. (2d Supp. C.R.,164)

8.     October 17, 2024, the associate judge granted the ex parte protective order against Graham. (2d Supp. C.R., 166)

9.     October 31, 2024, Appellant filed his application for protective order. (2d Supp. C.R. 172)

10.    November 4, 2024, the temporary orders hearing and the protective order hearing were conducted before the associate judge. (C.R.,26).

11.    November 7, 2024 the associate court made a ruling granting Appellee's application for protective order.  That same ruling denied Graham's protective order application in its entirety. (1st Supp. C.R., 451)

12.    November 7, 2024, Appellant filed a notice of appeal of the associate judge's ruling. (1st Supp. C.R.,453; 1st Supp. C.R.,455)

13.    January 28, 2025, the district court conducted a hearing on Graham's appeal of the associate judge's protective order ruling.  (C.R., 30).

14.    January 29, 2025, the district court entered a ruling dissolving the protective, allowing it to expire.  Without conducting a sanctions hearing, the district court dismissed Appellant's case.  (1st Supp. C.R., 520).

15.    On February 11, 2025, Appellant filed a motion to reinstate the case. (C.R. 483–495).

16.    On March 5, 2025, the trial court denied Appellant's motion to reinstate. (3 R.R. at 23, l. 2–3).

**STATEMENT REGARDING ORAL ARGUMENT**

17.     Oral argument is not requested by Appellant.

**ISSUES PRESENTED**

18.     Res judicata bars the relitigation of claims that were actually litigated or that could have been litigated in a prior proceeding arising from the same transaction, where: (1) there was a final judgment; (2) the parties are the same; and (3) the subsequent suit is based on the same claims.  Was Appellee entitled to obtain a subsequent protective order in Dallas County against Appellant, when Appellant Graham had already secured a final protective order against Appellee approximately three months earlier, involving the same parties and arising from the same July 5, 2024 assault incident that had already been adjudicated in the prior proceeding?

19.     An applicant for an ex parte protective order is required to sign the application under oath, affirming that the facts and circumstances stated therein are true to the best of the applicant's knowledge and belief. Was the application for the ex parte protective order and the associate court's subsequent granting of that application invalid where the application lacked the required sworn signature of the applicant?

20.     When an application seeks a protective order for a child subject to the continuing exclusive jurisdiction of a court, it must include either: (1) a copy of

each court order affecting conservatorship, support, or possession of and access to the child; or (2) a statement that the relevant orders are unavailable to the applicant and will be filed with the court before the hearing. Was Appellee's application for protective order, and the associate judge's ruling granting that application, invalid where the application included neither a copy of the relevant conservatorship orders nor a sworn statement indicating their unavailability and intent to file them before the hearing?

21.     Texas law expressly requires that, before imposing sanctions, a trial court must hold a hearing to give the affected party an opportunity to be heard. Did the trial court err by imposing death penalty sanctions on Appellant without first conducting a sanctions hearing, as required by law?

22.     Texas law requires that, before holding a sanctions hearing, the court must provide notice to the affected party. This notice must also clearly identify the specific conduct alleged to warrant sanctions. Did the trial court err by imposing death penalty sanctions and dismissing Appellant's case without providing notice of a sanctions hearing or specifying the conduct it deemed sanctionable?

23.     When imposing sanctions, a court must clearly explain its decision, including: (1) a description of the sanctionable conduct, (2) the relationship between that conduct and the sanctions imposed, and (3) the necessity for the severity of the sanctions. Did the trial court err by issuing a sanctions order that

dismissed Appellant's case, where the order failed to: (1) describe the sanctionable conduct; (2) explain the relationship between the conduct and the sanctions imposed; or (3) justify the severity of the sanctions?

24.     A trial court may exercise its inherent power to impose sanctions only when necessary to deter, alleviate, or address bad faith abuse of the judicial process. Did the trial court err by imposing death penalty sanctions and dismissing Appellant's case without holding a hearing or entering any evidence to determine whether Appellant had filed any motion in bad faith or had otherwise abused the judicial process?

25.     Under Texas law, sanctions must be "just," and dismissal is considered an extreme measure, reserved only for the most egregious cases. Did the trial court err by imposing death penalty sanctions and dismissing the case where: (1) no notice of intent to dismiss was given; (2) no reasons for dismissal were stated in any notice; (3) Appellant received no warning of court's intended dismissal; and (4) no lesser sanctions were imposed before resorting to the most extreme sanction?

26.     The legal standard for imposing death penalty sanctions requires a four-part analysis: (1) the sanction must be directly related to the offensive conduct; (2) the sanction must not be excessive; (3) the court must consider and rule out lesser sanctions before dismissal; and (4) the party's conduct must justify a

presumption that its claims or defenses lack merit. Did the trial court err by imposing death penalty sanctions against Appellant where: (1) no specific offensive conduct by Appellant was identified; (2) dismissal was imposed as the first and only sanction; (3) the court failed to consider lesser sanctions; and (4) Appellant was actively pursuing his claims, and no act was committed nor even alleged that would justify a presumption his claims lacked merit?

**STATEMENT OF FACTS**

27.     On November 23, 2020, the Court signed the Agreed Order in Suit to Modify Parent-Child Relationship (hereinafter "Agreed Order"), which outlined the rights and responsibilities of both Appellant and Appellee concerning the child. (2d Supp. C.R.,33). However, following the entry of the Agreed Order, Appellee exhibited increasing hostility toward complying with its terms and repeatedly violated the order. (2d Supp. C.R.,196, ¶¶ 2-15).

28.     Appellee frequently refused to produce the child during Appellant's court-ordered periods of possession and actively interfered with Appellant's access. Additionally, Appellee failed to provide essential documents mandated by the order, such as the child's health insurance and medical information. These violations made effective co-parenting impossible. Instead, Appellee sought to impose her own parenting demands on Appellant, which Appellant refused to accept, further exacerbating tensions (2d Supp. C.R.,196, ¶¶ 2-15).

29.     On July 5, 2024, during a routine custody exchange at Appellee's residence in Arlington, Texas, the situation escalated into physical violence. Appellee became irate over Appellant's rules concerning the child's cell phone usage. As Appellant attempted to assist the child with her belongings, Appellee forcefully pushed her way between them, took a swing at Appellant, and violently shoved him down the stairs in front of her townhouse (1st Supp. C.R., 15 ¶ 3); (2 R.R.,117 l. 20-24).

30.     This incident, which occurred in full view of the child, resulted in criminal charges being filed against Appellee for assault family violence (Case No. 009344657, Arlington). (2 R.R. 117 l. 20-24) ;(2 R.R. Pl. Ex. FX-1).  On July 19, 2024, Appellant filed an application for a protective order based on this incident (2d Supp. C.R., 69).

31.     On July 23, 2024, the 231st District Court in Tarrant County issued an ex parte protective order against Appellee for the July 5, 2024, incident. (2d Supp. C.R., 79-106). Following a full trial, the Court signed a final protective order on August 6, 2024, which included a specific finding of family violence committed by Appellee based on the July 5, 2024 assault. (1st Supp C.R., 18-27); (1st Supp. C.R., 19).

32.     On August 7, 2024, Appellant filed a Petition to Modify Parent-Child Relationship requesting a Temporary Restraining Order, Temporary Injunction,

and Temporary Orders. (1st Supp. C.R., 6). That same day, the associate court issued a Temporary Restraining Order (TRO) in favor of Appellant. (1st Supp. C.R. 40-41).

33. The temporary orders hearing was held on August 20, 2024, before the associate court. In its ruling, the associate court did not extend the supervised visitation requirement imposed by the TRO but instead reinstated the terms of the 2020 Agreed Order as temporary orders. (1st Supp. C.R., 61). Additionally, the court appointed an amicus attorney. (1st Supp. C.R. 61). However, after the hearing, the associate court failed to provide an order to Appellant regarding any requirement to pay social study fees. (3 R.R at 4 l. 24-25; 3 R.R 5 l.1) Over the next several days, the associate court transmitted three documents via regular email to Appellant:

   a) August 20, 2024: Associate Court Report. (3 R.R. 6 l. 21-22)
   b) August 21, 2024: Notice of a Status Conference. (3 R.R. 6 l. 23-24)
   c) August 22, 2024: A follow-up report removing the amicus attorney due to a conflict of interest. (3 R.R. at 6 l. 24-25; 2 R.R. 7 l.1-2).

34. Despite the protective (1st Supp. C.R.,18-27) and restraining orders in place . (1st Supp. C.R. 6), Appellee continued to violate the 2020 Agreed Order. On September 3, 2024, Appellant filed Motion for Contempt #1 for Appellee's violations of the final 2020 order. Appellee persisted in her noncompliance, leading Appellant to file Motion for Contempt #2 on September 30, 2024. (2d Supp. C.R. 154; 2d Supp. C.R., 159).

35. On October 15, 2024, the district court held a preliminary hearing on Appellant's enforcement and contempt motions. (C.R. 24). During this hearing, the court appointed court-appointed counsel for Appellee in the enforcement proceedings and rescheduled the hearing for November 18, 2024. (C.R. 25).

36. That same day, on October 15, 2024, Appellee filed an ex parte application for a Temporary Restraining Order (TRO) (1st Supp. C.R. 254) and a Protective Order, along with requests for temporary and final protective orders, all based on the same July 5, 2024 incident previously adjudicated in the 231st District Court of Tarrant County, where Appellee was found to have committed family violence against Appellant; however, this time Appellee falsely claimed she was assaulted during the incident. (1st Supp. C.R. 258; 1st Supp. C.R. 73 ¶ 2; 1st Supp. C.R. 81 ¶ 2). The associate court granted the TRO that same day and issued the ex parte protective order on October 17, 2024. (2d Supp. C.R. 164-165; 2d Supp. C.R. at 166-171).

37. On November 4, 2024, the associate court held a hearing on Appellee's application for a protective order. (2d Supp. C.R. 24; docket sheet shows 11/4/24 hearing date). On November 7, 2024, the court issued its ruling, granting Appellee's request for a protective order against Appellant and ordering that a child interview be conducted. (1st Supp. C.R. 450). In its ruling, the associate court acknowledged that a prior trial had already addressed the same

matter, yet still granted the protective order, thus effectively overruling Appellant's claim preclusion objection. (1st Supp. C.R. 452 ¶ 2). A copy of the order was sent to Appellant via standard email.

38.    On November 7, 2024, Appellant filed a Notice of De Novo Hearing, appealing the associate court's ruling granting the protective order to the district court. (1st Supp. C.R. 453)

39.    On December 11, 2024, Appellant filed his Motion to Bar Respondent's Application for Protective Order, reurging his objection to the associate court's granting of Appellee's application for protective order. (2d Supp. C.R. 64 ¶16).

40.    The de novo hearing was held on January 28, 2025, before the 301st District Court. (C.R. 30).  At the outset, and without reviewing the Motion to Bar Respondent's Application for Protective Order, knowing its contents, or allowing Appellant an opportunity to present its substance, the Court summarily denied it. (2 R.R. 11 l. 4-11; (2 R.R. 12 l.3-6).   At the conclusion of the hearing, the district court dissolved Appellee's protective order, allowing it to expire. (1st Supp. C.R. 520). However, the district court dismissed Appellant's entire lawsuit, citing:

> a)  The failure of both parties to pay social study fees, and
> b)  A claim that Appellant's filings were abusive, requiring frequent hearings and thus wasting court resources. (1 Supp. C.R. 520; 2 R.R. 9 l.23-25).

Notably, the trial court did not make any findings that Appellant's pleadings were groundless, legally or factually unsupported. (1st Supp. C.R. 520).

41.    On January 29, 2025, the district court transmitted its ruling via regular email to Appellant. The ruling confirmed:

   a)  The dissolution/expiration of Appellee's protective order. (1st Supp. C.R. 520).
   b)  The dismissal of Appellant's entire suit for alleged disobedience of court orders and abusive filings. (1st Supp. C.R. 520).
   c)  The dismissal of all pending motions that were scheduled for hearing. (1st Supp. C.R. 520).

**SUMMARY OF ARGUMENT**

42.    The district court erred in denying Appellant's Motion to Bar Respondent's Application for Protective Order, and the associate court likewise erred in granting it. The 231st District Court had already held a protective order trial involving the same parties and the same July 5, 2024 incident, resulting in a final protective order in favor of Appellant, from which no appeal was taken. All elements of claim preclusion were satisfied. Under that doctrine, Appellee was barred from filing a second application based on the same incident in a different court.          30

43.    The application for the ex parte protective order was invalid because it lacked the applicant's required sworn signature affirming the truth of the allegations. The associate court erred in granting the application despite this defect. Texas law mandates that such applications be signed under oath, and failure to

comply with this requirement renders both the application and the resulting order legally deficient. 36

44. Appellee's application for protective order, and the associate judge's ruling granting that application were invalid because the application failed to comply with statutory requirements. It included neither a copy of the existing conservatorship orders nor a sworn statement explaining their unavailability and the intent to file them before the hearing. This omission violated mandatory procedural rules, rendering the application and the order based on it fatally defective. 36

45. The trial court erred by imposing death penalty sanctions on Appellant without first conducting a sanctions hearing, as required by Texas law. A hearing is mandatory to provide the accused party an opportunity to be heard before such severe sanctions are imposed. The absence of any hearing rendered the sanctions order procedurally and legally improper. 38

46. The trial court erred by imposing death penalty sanctions and dismissing Appellant's case without providing advance notice of a sanctions hearing or identifying the specific conduct it deemed sanctionable. Texas law requires both notice and a clear description of the alleged misconduct to satisfy due process before sanctions may be imposed. The court's failure to comply with these requirements invalidated its ruling. 40

47. The trial court erred by issuing a sanctions order that dismissed Appellant's case without meeting the required legal standard. The order failed to: (1) identify any sanctionable conduct; (2) explain how the conduct justified dismissal; and (3) provide any reasoning to support the severity of the sanction imposed. This lack of findings rendered the sanctions order legally defective. 41

48. Court's dismissal is erroneous because the dismissal order because it contains rulings outside the scope of dismissal. 43

49. The trial court erred by imposing death penalty sanctions and dismissing Appellant's case without holding a hearing or entering any evidence to determine whether Appellant had acted in bad faith or abused the judicial process. Sanctions based on inherent authority require clear proof of bad faith, which was never alleged, proven, or considered. The absence of any evidentiary basis renders the sanctions improper. 44

50. The trial court erred by imposing unjust death penalty sanctions and dismissing the case without satisfying basic due process requirements. Appellant received no notice of the court's intent to dismiss, no reasons for dismissal were stated, no prior warning was given, and no lesser sanctions were considered or imposed. The trial court's actions violated the requirement that sanctions be just and proportionate. 47

51.     The trial court erred by failing to apply the required four-part test before imposing death penalty sanctions. The court: (1) did not identify any specific offensive conduct by Appellant; (2) imposed dismissal as the first and only sanction; (3) failed to consider lesser sanctions; and (4) sanctioned Appellant despite his active pursuit of the case and the absence of any conduct alleged or proven that would justify presuming his claims lacked merit. This failure rendered the sanction legally improper.          49

52.     Court erred when it dismissed Appellant's case citing   abusive filings/abuse of the legal processs since court may impose sanctions for pleadings abuse only when a party files groundless or frivolous pleadings, motions, or other papers. Sanctions under Texas Rule of Civil Procedure 13 require a showing that a pleading, motion, or other paper was both groundless and filed in bad faith, for harassment, or with knowledge that it was false.  Appellant has not committed any pleadings abuse, no evidence was entered to support such a claim and Appellant's filings were not sanctionable warranting dismissal.          58

**STANDARD OF REVIEW**

53.     The trial court misapplied the applicable law in its decision, the evidence is legally insufficient to support the trial court's rulings and the trial court's decisions amount to an abuse of discretion. When the issue turns on a pure question of law (i.e. when the trial court errors in applying the law) the proper

standard is de novo. El Paso Nat Gas. Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex. 1999). When reviewing under a de novo standard the appellate court conducts an independent analysis of the record to arrive at its own legal conclusion does not defer to the trial court's conclusions and may substitute its conclusion for those made by the trial court. Quick v. City of Austin, 7 S.W.3d 109, 116 (Tex. 1998).

54.     When an allegation is made concerning a complete lack of evidence to support a finding the appellate court reviews the legal sufficiency of the evidence. Raw Hide Oil & Gas Inc. v. Maxus Expl. Co., 766 S.W.2d 264, 275-76 (Tex. App.-- Amarillo 1998, writ denied). No evidence standard is used to evaluate the evidence supporting the fact-finder's determination of an issue on which the appellant did not have the burden of proof at trial. Graham Cent. Station Inc. v. Pena, 442 S.W.3d 261, 263 (Tex. 2014). The appellate court will sustain a no evidence complaint if the record shows any of the following 1) there is no evidence supporting the challenged element 2) the evidence offered to prove the challenged element is no more than a mere scintilla 3) the evidence establishes the opposite of the challenged element, or if the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenge to element. HMC Hotel Properties II L.P. v. Keystone-Tex. Prop. Holding Corp., 439 S.W.3d 910, 913 (Tex. 2014).

55. The as-a-matter-of-law standard is used to evaluate whether the evidence establishes an issue on which the plaintiff has the burden of proof at trial and whether the fact-finder erred in not making the finding in appellant's favor. Sterner v. Marathon Oil Co., 767 S.W W.2d. 686, 690 (Tex. 1989). The appellant must assert that the evidence establishes as a matter of law all vital facts supporting the issue. Dow Chem. Co. v. Francis, 46 S.W.3D 237, 241 (Tex. 2001). And reviewing the fact finders' verdict, the Appellate Court 1) must give credit to evidence favorable to the finding if a reasonable fact finder could do so and must disregard contrary evidence unless a reasonable fact-finder could not do so, and 2) if there's no evidence to support the findings must examine the entire record to determine whether the contrary proposition is established as a matter of law. *Id*.

56. Sanctions orders are reviewed for abuse of discretion. Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 573 (Tex.2018); In re National Lloyds Ins., 507 S.W.3d 219, 226 (Tex.2016); Nath v. Texas Children's Hosp., 446 S.W.3d 355, 361 (Tex.2014); Unifund CCR Partners v. Villa, 299 S.W.3d 92, 97 (Tex.2009); see also Falk & Mayfield L.L.P. v. Molzan, 974 S.W.2d 821, 827 (Tex.App—Houston [14th Dist. ] 1998, pet. denied) (degree of discretion for trial court is greater when sanctions are imposed for groundless pleadings rather than for discovery abuse). If the trial court made findings of fact to support the sanctions order, the appellate court should not treat the findings as

findings of fact made under Tex. R. Civ. Proc. 296, which are reviewable under legal-sufficiency and factual-sufficiency standards. KB Indus. v. Pro-Line Corp., 938 S.W.2d 440, 442 (Tex.1997); Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex.1992). The findings filed by the trial court after sanctions are merely to assist the appellate court in deciding whether the trial court abused its discretion. Chrysler Corp., 841 S.W.2d at 852. The appellate court should not limit its review to the findings of fact; it must make an independent review of the entire record to determine whether the trial court abused its discretion. American Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex.2006).

57.     A clear abuse of discretion is found only when an action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law", Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). The test is whether the [court] clearly "acted without reference to any guiding rules and principles," or "whether the act was arbitrary or unreasonable" Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–242 (Tex. 1985).

**ARGUMENTS AND AUTHORITIES**

**a. Res judicata bars Appellee's application for protective order and TRO.   Appellee's application for protective order and TRO, filed on October 15, 2024, is based on the same July 5, 2024 incident that was litigated in Tarrant County's 231st District Court**

58. The district court erred in denying Appellant's Motion to Bar Respondent's Application for Protective Order, and the associate court likewise erred in granting Appellee's application for protective order. Res judicata bars the litigation of claims actually litigated as well as those arising from the same transaction that could have been litigated. Engelman Irrigation Dist. v. Shields Bros., 514 S.W.3d 746, 750 (Tex.2017); Igal v. Brightstar Info. Tech. Grp., 250 S.W.3d 78, 86 (Tex.2008). Res judicata prevents the relitigation of a claim or cause of action that was adjudicated and resolved by a final judgment, as well as related matters that with the use of diligence should have been litigated in the earlier suit. Citizens Ins. v. Daccach, 217 S.W.3d 430, 449 (Tex.2007); Hallco Tex., Inc. v. McMullen Cty., 221 S.W.3d 50, 58 (Tex.2006); State & Cty. Mut. Fire Ins. v. Miller, 52 S.W.3d 693, 696 (Tex.2001); Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex.1996); see Amedisys, Inc. v. Kingwood Home Health Care, LLC, 437 S.W.3d 507, 516 (Tex.2014) (res judicata after settlement between parties).

59. A claim of res judicata requires proof of the following elements: 1) Final judgment. A court of competent jurisdiction signed a final judgment on the merits in the first suit. Engelman Irrigation Dist. v. Shields Bros., 514 S.W.3d 746, 750 (Tex.2017); Citizens Ins. v. Daccach, 217 S.W.3d 430, 449 (Tex.2007); Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex.1996); e.g., Igal v.

Brightstar Info. Tech. Grp., 250 S.W.3d 78, 86-87 (Tex.2008) (administrative agency's final judgment on P's claims barred P's later-filed common-law action on same claims); see, e.g., Travelers Ins. v. Joachim, 315 S.W.3d 860, 866 (Tex.2010) (order of dismissal with prejudice after nonsuit, although erroneous, was merely voidable and thus was final determination on the merits because P did not directly attack order; P's refiling of same cause of action was barred by res judicata).  2) Same parties. The parties in the second suit are the same as those in the first suit or are in privity with them. Igal, 250 S.W.3d at 86; Citizens Ins., 217 S.W.3d at 449; Amstadt, 919 S.W.2d at 652-53.  3) The second suit is based on the same claims that were raised or that could have been raised in the first suit. Igal, 250 S.W.3d at 86; Citizens Ins., 217 S.W.3d at 449; Compania Financiara Libano, S.A. v. Simmons, 53 S.W.3d 365, 367 (Tex.2001); e.g., Robinson v. Garcia, 5 S.W.3d 348, 351-52 (Tex. App.—Corpus Christi 1999, pet. denied) (P's claims in both tax suit and fee suit arose from attorney's representation of him in earlier lawsuit; tax suit was barred by fee suit).

Res judicata bars Appellee's application for protective order and TRO.  Appellee's application for a protective order and TRO, filed on October 15, 2024, is based on the same July 5, 2024 incident that was litigated in Tarrant County's 231st District Court. That court issued a final protective order against Appellee on August 6, 2024, after making a finding that Appellee had committed family violence. (2d

Supp. C.R. 97–106). This satisfies the first element of res judicata requiring a final judgment.

60.     The parties in the prior case are identical to those in the current litigation in the trial court: Appellant Graham initiated the prior action against Appellee Fawcett.(2d Supp. C.R. 97); (2d Supp. C.R. 69).  Appellee's subsequent application for protective order involved the same parties. (2d Supp. C.R. 172). Thus satisfying element 2.

61.     Element 3 is satisfied because both actions arise from the same July 5, 2024 incident. The basis of Appellant's application for a protective order and Appellee's subsequent application is identical, as demonstrated by the documents and affidavits filed in both cases.  Appellant's application for protective order in case 231-754265-24 (i.e. the first action)  is based on the July 5, 2024 assault-by-Appellee incident which states as follows (2d Supp. C.R. 77).:

> 2.  Describe the most **recent time** the Respondent hurt or threatened to hurt you, including any conduct involving sexual assault, stalking, or trafficking:
> See Unsworn affidavit attached for complete details. On 7/5/2024 when I arrived at Respondent's house to pick up my duagther, Respondent becase loud and violent and created a disturbance, drawing the attention of the neighbors She was angry over my rules regarding my daughter's cell phone privileges.  As I moved to assist my daughter with h r things, Respondent got between us, took a swing at me and thne pushed by down the stairs in front of her house Fortunately, I was able to maintain my balance and I did not call.  Respondent called the police.

62.     Furthermore the unsworn declaration also refers to this incident being the basis of Appellant's application as shown in the following excerpt (2d Supp. C.R. 80, ¶ 3):

3. On July 5, 2024, the situation escalated to physical violence. When I arrived at the Respondent's residence to pick up our daughter in Arlington, Texas the Respondent became extremely angry and created a disturbance, drawing the attention of neighbors. The conflict arose over our daughter's cell phone privileges. As I moved to assist my daughter with her things, the Respondent, in a fit of rage, interjected herself between us, took a swing at me, and then pushed me down the stairs in front of her townhouse. Fortunately, I was able to maintain my balance and did not fall. After this assault, she called the police, who investigated and determined that the

63.     Nearly 4 months later, after this incident had already been litigated, a finding of family violence entered against the Appellee and while facing Appellant's contempt motion, Appellee filed an Application for Protective Order and TRO.  The application is based on the same July 5, 2024 event as shown in page 5 of Appellee's Unsworn Affidavit in Support of Request for Temporary Restraining Order, an excerpt of which is produced below (2d Supp. C.R. 127):

"I ask the Court to make the Temporary Restraining Order requested in this motion because:

On July 5th, 2024, Christopher came to my house and assaulted me. The incident started when I expressed my concern about Reigns safety because the weekend prior Chris had given Reign a cell phone with no safety filters on it to keep Reign safe online or while using the phone.

64.     In the affidavit attached to Appellee's Application for Protective Order, Appellee again indicates that the application is based on the July 5, 2024 assault incident.  The affidavit as follows: (2d Supp. C.R. 145, ¶ 2):

2.   Describe the most **recent time** the Respondent hurt or threatened to hurt you, including any conduct involving sexual assault, stalking, or trafficking:
July 5th, 2024 Chris came to my house & assulted me several times. He then threatened me so that I would mislead the police & he would not suffer any consequences. Our daughter Reign was also assulted when I fell back onto her after Chris rushed me with his body and grabbed at Reign. Reign, Malik and myself have all suffered a lot

65. Thus, res judicata bars Appellee's application for protective order and TRO since they are attempts to re-litigate the same incident. Any claims or defenses arising out of the July 5, 2024 incident, or any claims that could have been raised in the prior litigation, are also precluded. Appellant raised this argument in his Motion to Bar at the outset of the de novo protective order hearing on January 28, 2025. (2 R.R. 9, l. 5; 2 R.R. 10, ll. 19–25). Rather than applying the proper legal standard, the trial court made the inquiry, "Did she bring [an application for protective order] before?" (2 R.R. 11, ll. 8–10). This question was legally irrelevant. The controlling issue was whether the July 5, 2024 assault allegation had already been litigated to a final judgment in the prior protective order proceeding. From a policy standpoint, it also makes no sense to allow a later claim to proceed based on the same incident. Judicial economy and fairness demand finality in litigation. Under the doctrine of res judicata, parties are required to bring all claims arising from a single transaction in one proceeding. Allowing repetitive filings based on the same facts undermines judicial efficiency and invites harassment through duplicative litigation. Appellee presented no countervailing evidence, and Appellant established the elements of claim preclusion as a matter of law. The trial court's failure to apply res judicata correctly constituted both legal error and an abuse of discretion.

**b. Application for ex parte protective order invalid since it was not signed under oath**

66.    The associate judge, Ten Eyck, erred in granting Appellee's application for an ex parte protective order because the application failed to meet the clear statutory requirements of the Texas Family Code. Under Tex. Fam. Code § 82.009(a)(2), an application for a temporary ex parte order under Chapter 83 must be "signed by each applicant under an oath that the facts and circumstances contained in the application are true to the best knowledge and belief of each applicant."

67.    On October 15, 2024, Appellee filed an application for an ex parte protective order. (1st Supp. C.R. 73; 1st Supp. C.R. 78, ¶ 13). However, the application contains no sworn signature or oath of verification. (1st Supp. C.R. 80). This omission renders the application legally defective on its face. Nonetheless, the associate judge proceeded to grant the ex parte order. (2d Supp. C.R. 171).  By granting a protective order based on an unsigned, unsworn application, the associate judge ignored the statutory safeguard intended prevent misuse of ex parte relief. This failure constituted clear legal error and invalidates the resulting order.


**c. Application for ex parte protective order invalid since it did not follow the   requirements of Tex. Fam. Code 82.007**

68.    Additionally, the associate judge's Ruling on Application for Protective Order was erroneous because such an order may only be issued upon a valid application. Appellee's application failed to meet the statutory prerequisites outlined in Tex. Fam. Code § 82.007, which governs protective order applications involving a child under the continuing exclusive jurisdiction of a court.

69.    Under this provision, an application must include either: (1) a copy of each court order affecting conservatorship, support, or possession of or access to the child; or (2) a statement that such orders are unavailable and that a copy will be filed before the hearing. Appellee's application sought a protective order involving a child already under the continuing exclusive jurisdiction of the court, as evidenced by the Agreed Order in Suit to Modify Parent-Child Relationship. (2d Supp. C.R. 33–60). Texas law affirms that a court acquires exclusive continuing jurisdiction once it makes a valid initial child custody determination. Tex. Fam. Code § 152.202(a).

70.    Despite this, Appellee's application failed to comply with either statutory option. No copy of the relevant conservatorship order was attached to the application. (2d Supp. C.R. 172–195). Nor did the application contain the required sworn statement that the orders were unavailable and would be filed before the hearing. (2d Supp. C.R. 173, ¶ 6). Without either of these mandatory components, the application was statutorily defective.

71. Because the trial court lacked a valid application before it, the associate judge's grant of the protective order was legally erroneous. The court acted beyond its authority by granting relief in response to a noncompliant filing, thereby violating procedural safeguards designed to protect the integrity of protective order proceedings.

**d. Court's dismissal of Appellant's case is erroneous because no hearing was conducted prior to imposing sanctions**

72. The Court's dismissal of Appellant's case is erroneous because no hearing was conducted prior to imposing sanctions, in clear violation of Texas law and due process requirements. Texas law explicitly mandates that before sanctions are imposed, a court must hold a hearing to provide the affected party an opportunity to be heard. Under Tex. Civ. Prac. Rem. Code §§9.012(c) and 10.003, Tex. R. Civ. without notice and a hearing constitute reversible error. See Horizon Health Corp. v. Acadia Healthcare Co., 520 S.W.3d 848, 884 (Tex. 2017) (reversing discovery sanctions for lack of a hearing); R.M. Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 709-10 (Tex.App.—Waco 2008, pet. denied) (sanctions under Tex. Civ. Prac. Rem. Code ch. 10 required a hearing). Furthermore, in Sears, Roebuck & Co. v. Hollingsworth, 293 S.W.2d 639, 642 (Tex. 1956), the Texas Supreme Court reversed sanctions imposed for disregarding a subpoena because

the party had not been afforded notice or a hearing. Similarly, in <u>Tidrow v. Roth</u>, 189 S.W.3d 408, 413 (Tex.App.—Dallas 2006, no pet.), the appellate court reversed discovery Proc. 13, 21b, 215.2(b), and 215.3, as well as due process principles, a hearing is required before a court can strike pleadings, render a default judgment, or impose any form of monetary sanctions. The Texas Supreme Court and multiple appellate courts have reinforced this principle, holding that sanctions imposed sanctions for failure to conduct a hearing.

73.    The requirement of an oral hearing is particularly relevant when courts impose sanctions that impact a party's fundamental rights, such as dismissal. Texas courts have held that a hearing is necessary to allow the sanctioned party to present evidence and arguments before sanctions are imposed. See, e.g., <u>Bedding Component Manufacturers, Ltd. v. Royal Sleep Prods</u>., 108 S.W.3d 563, 564 (Tex.App.—Dallas 2003, no pet.) (reversing Tex. R. Civ. Proc. 13 sanctions for lack of a hearing); <u>Bisby v. Dow Chem. Co</u>., 931 S.W.2d 18, 21 (Tex.App.—Houston [1st Dist.] 1996, no writ) (same). Likewise, in <u>Davila v. World Car Five Star</u>, 75 S.W.3d 537, 544 (Tex.App.—San Antonio 2002, no pet.), the appellate court held that a trial court must allow the party to present evidence at an oral hearing before imposing sanctions.

74.    Here, the Court imposed the harshest possible sanction, dismissal, without conducting any hearing. (2d Supp. C.R. 145, pp. 18–29; this period

encompasses the start of the modification action through the final order of dismissal; no sanctions hearing was ever conducted). Appellant was never provided an opportunity to present evidence, refute allegations, or argue against the imposition of sanctions. The absence of a hearing not only contravenes Texas statutory law and well-established case law but also violates fundamental due process protections. Accordingly, the dismissal order and the trial court's statements that "Appellant's case is being dismissed willful failure to follow court orders and abuse of the legal process" is invalid, erroneous and a clear abuse of discretion. (1st Supp. C.R. 520).

**e. Court's dismissal of Movant's case is erroneous due to the lack of proper notice.**

75. The trial court's dismissal of Appellant's case is erroneous due to the lack of proper notice. Due process and multiple provisions in the Tex. Civ. Prac. Rem. Code and Tex. R. Civ. Proc. require a court to provide notice before holding a hearing on sanctions. See Tex. Civ. Prac. Rem. Code §§9.012(c), 10.003; Tex. R. Civ. Proc. 13, 21b, 215.2(b), 215.3; Horizon Health Corp. v. Acadia Healthcare Co., 520 S.W.3d 848, 884 (Tex. 2017) (discovery sanctions); Low v. Henry, 221 S.W.3d 609, 618 (Tex. 2007); Cire v. Cummings, 134 S.W.3d 835, 843 (Tex. 2004). The Texas Supreme Court has emphasized that notice of a sanctions hearing must be adequate. Plano S&L Ass'n v. Slavin, 721 S.W.2d 282, 284 (Tex. 1986). Oral notice is insufficient; the court must provide written notice. In re Acceptance

<u>Ins.</u>, 33 S.W.3d 443, 451 (Tex. App.—Fort Worth 2000, orig. proceeding). Here, the court did not notify Appellant of any sanctions hearing, nor did it specify the conduct it deemed sanctionable. Without such notice, Appellant was denied the opportunity to present a defense, making the dismissal procedurally defective.

76.     Additionally, a motion for sanctions must clearly identify the specific conduct that allegedly warrants sanctions.  The motion for sanctions must outline prior acts that justify sanctions. See <u>Downer v. Aquamarine Operators</u>, Inc., 701 S.W.2d 238, 241 (Tex. 1985); <u>Medical Prot. Co. v. Glanz</u>, 721 S.W.2d 382, 388 (Tex. App.—Corpus Christi 1986, writ ref'd). The court failed to provide Appellant with any notice or specify the exact conduct it deemed sanctionable. (2d Supp. C.R. 145, pp. 18–29; this period encompasses the start of the modification action through the final order of dismissal; no notice of the court's intent to dismiss or a notice of intent to impose sanctions for specified conduct was ever served on Appellant); (3 R.R. at 9 l. 5-18)  Without a clear identification of the grounds for sanctions, the dismissal order and the trial court's statements that "Appellant's case is being dismissed willful failure to follow court orders and abuse of the legal process" are invalid and must be reversed.  (3. R.R. at 9 l. 19-25; 3 R.R. at 10 l. 1)

**f. The Court's  dismissal is erroneous because the dismissal order is procedurally defective and thus void**

77.     The court's dismissal of Appellant's case is erroneous because the dismissal order itself is procedurally defective. A court imposing sanctions must provide a clear explanation for its decision, which includes: (1) a description of the sanctionable conduct, (2) the relationship between the conduct and the sanctions imposed, and (3) the necessity for the severity of the sanctions. See CHRISTUS Health Gulf Coast v. Carswell, 505 S.W.3d 528, 540 (Tex. 2016); Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003). The order dismissing Appellant's case fails to meet these requirements, as it does not specify the conduct that allegedly warranted dismissal , relationship between the conduct and the sanctions imposed or explain why such a severe sanction was necessary.

78.     When a court imposes death-penalty sanctions, such as dismissal, it must provide additional justification by (1) stating that a lesser sanction was attempted and proved ineffective, or explaining why a lesser sanction was not imposed, and (2) establishing that the sanctioned party's conduct justifies the presumption that its claims lack merit. See Cire v. Cummings, 134 S.W.3d 835, 842 (Tex. 2004); GTE Comms. Sys. v. Tanner, 856 S.W.2d 725, 729-30 (Tex. 1993). The dismissal order contains no such explanation, nor does it demonstrate that the court considered lesser sanctions before resorting to dismissal. (1st Supp C.R. 520). Without these essential findings, the order is defective, void, and legally erroneous, warranting its reversal.

**g. Court's dismissal is erroneous because the dismissal order because it contains rulings outside the scope of dismissal**

79.    The order of dismissal is also defective because it contains rulings outside the scope of dismissal, which is not permissible. A dismissal order should be limited solely to dismissing the case and should not make determinations on the merits or impose substantive terms affecting the rights of the parties. If a dismissal order includes provisions beyond dismissal, such as dictating future conduct or modifying existing rights, it constitutes reversible error. Garcia-Marroquin v. Nueces Cty. Bail Bond Bd., 1 S.W.3d 366, 379 n.8 (Tex.App.—Corpus Christi 1999, no pet.); Alvarado v. Magic Valley Elec. Co-op, Inc., 784 S.W.2d 729, 733 (Tex.App.—San Antonio 1990, writ denied).

80.    Here, the dismissal order is defective because it not only dismisses the case but also improperly dictates terms regarding child exchanges and Appellant's election to return the child to school. Specifically, the order:

a) Establishes the location for child exchanges by stating that exchanges not taking place at school "shall be at the Grand Prairie Police Department." (1st Supp C.R. 520-521).
b) Imposes procedural requirements on Appellant's election to return the child to school at the end of his possession period, requiring him to notify Appellee in writing via email. (1st Supp C.R. 520-521).

These additional terms exceed the proper scope of a dismissal order and constitute a substantive ruling on the parties' rights. Because these provisions go beyond the dismissal of the case and improperly establish new terms, the order is void and must be set aside.

**h. The trial court erred by imposing death penalty sanctions and dismissing Appellant's case without holding a hearing or entering any evidence to determine whether Appellant had acted in bad faith or abused the judicial process**

81. The court's dismissal of Appellant's case was erroneous because Appellant has not engaged in any conduct that constitutes an abuse of the judicial process. While a trial court has inherent authority to impose sanctions for conduct that disrupts the court's ability to administer justice, such power is limited to cases where a party's actions interfere with the court's traditional core functions. See In re Bennett, 960 S.W.2d 35, 40 (Tex. 1997); Westview Drive Invs. v. Landmark Am. Ins., 522 S.W.3d 583, 613 (Tex.App.—Houston [14th Dist.] 2017, pet. denied); Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 574-75 (Tex. 2018). A trial court may only exercise this inherent power to sanction when necessary to deter, alleviate, or counteract bad faith abuse of the judicial process. See Liles v. Contreras, 547 S.W.3d 280, 290 (Tex.App.—San Antonio 2018, pet. denied); Kutch v. Del Mar Coll., 831 S.W.2d 506, 510 (Tex.App.—Corpus Christi 1992, no writ).

82. COURT: I'm going to find a solution to help you guys because one family can't take up 75 percent of the court's resources. (2 R.R at 9 l.23-25); MS. FAWCETT: He's filing frivolous -- THE COURT: He's doing a good job of that, but that's okay. (2 R.R. at 19 l. 22-23); The Court called Appellant's application for protective order frivolous without having heard evidence on the motion. No

hearing for sanctions was ever conducted or evidence entered for a determination to be made concerning whether Appellant's actions interfered with the court traditional core functions. No hearing or evidence was entered whereby the trial court determined if sanctions were necessary to counteract bad faith abuse of the judicial process. (2d Supp. C.R. 145, pp. 18–29; this period encompasses the start of the modification action through the final order of dismissal; no sanctions hearing was ever conducted or evidence entered). On January 28, 2025, the parties were there on a de novo hearing for a protective order (C.R. 27; 1st Supp. C.R. 453–456; 1st Supp. C.R. 520; the trial court's order indicates that "the case proceeded to hearing on his de novo appeal"); not to determine the propriety of Appellant's filings or whether they were abusive. (2 R.R. at 16 l.22-25).

83. Appellant's actions in filing motions supported by fact and law do not constitute an abuse of the judicial process but rather represent the precise function for which courts exist: to provide a forum for parties to seek redress and legal relief. (2 R.R. at 8 l 4-24).The mere filing of motions did not interfere with the court's docket, as the court has full discretion in allocating time and scheduling hearings as it deems appropriate. Additionally, the failure to pay social study fees did not obstruct the court's ability to decide issues of fact or law. Appellant intended to request a jury trial, which would have independently determined the relevant factual issues, and the court does not require a social study to resolve legal

questions, as the law governing modification cases exists independent of any social study report.

84. Moreover, the court cannot claim that Appellant's alleged failure to pay social study fees impinged on its core functions when no clear order requiring such payment was ever transmitted to Appellant. Neither the associate judge's recommendation nor any order from the district court was provided to Appellant, outlining his obligation to pay social study fees. (2 R.R. at 7 l.3-7) Without such notice, Appellant cannot be penalized for noncompliance. Further, Appellant's assertion of an inability to pay (2 R.R. at 7 l. 13-19) is not an abuse of the judicial process but a legitimate affirmative defense explicitly recognized by law, which provides exceptions to compliance based on financial hardship. Tex. Fam. Code Sec. 157.008(c). Notably, the trial court has allowed other cases to proceed without a social study, demonstrating that such a requirement is not an absolute prerequisite to adjudicating modification cases.

85. Because Appellant's conduct did not interfere with the court's core functions or undermine the administration of justice, and because the court did not conduct an evidentiary hearing on the issue of whether Appellant abused the judicial process or willfully failed to follow court orders, the imposition of sanctions through dismissal allegedly based on willful failure to follow court

orders and abuse of the legal process" is invalid said grounds was erroneous and must be reversed.

### i. This Court erred in dismissing Appellant's case because such sanctions were unjust and excessive

86. The court's imposition of dismissal sanctions was not just but excessive. Sanctions must be "just" under Texas law. See Tex. R. Civ. Proc. 215.2(b); Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 575 (Tex. 2018); Horizon Health Corp. v. Acadia Healthcare Co., 520 S.W.3d 848, 884 (Tex. 2017); Paradigm Oil, Inc. v. Retamco Oper., Inc., 372 S.W.3d 177, 184 (Tex. 2012); Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003); TransAmerican Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). This requirement ensures that the severity of the sanction corresponds to the nature of the alleged misconduct—"the punishment should fit the crime." Altesse Healthcare Solutions, 540 S.W.3d at 572; Paradigm Oil, 372 S.W.3d at 187; TransAmerican, 811 S.W.2d at 917. These standards apply not only to discovery abuse but also to pleadings abuse and sanctions imposed under the court's inherent power. See Altesse Healthcare Solutions, 540 S.W.3d at 574-75; Nath v. Texas Children's Hosp., 446 S.W.3d 359, 364 (Tex. 2014).

87. Sanctions imposed under the court's inherent power must not be excessive. See Altesse Healthcare Solutions, 540 S.W.3d at 574-75 (finding that a

trial court's inherent power sanctions for violating a TRO amounted to double recovery and were excessive). The first and only sanction imposed in this case was the most extreme: dismissal of Appellant's case. This sanction was wholly unjustified, particularly given that Appellant was never served with an order requiring payment of social study fees. (3 R.R. at l.3–7; 1st Supp. C.R. 18–29, showing no indication in the docket sheet that Appellant was served with the order to pay social study fees between the initiation of the modification case and the final dismissal order). Without such notice, it was improper for the court to impose any sanction for nonpayment.

88.     Even if the court had concerns about the social study fee issue (3 R.R. l. 16-19), it had a range of lesser sanctions available that would have been more appropriate than dismissal. The court could have, for instance, drawn a negative inference from the unpaid fee rather than outright dismissing the case. It could have assessed Appellant's financial situation and proposed a flexible payment arrangement. Similarly, if the court took issue with the frequency of Appellant's legitimate filings, it could have requested that Appellant consolidate motions into a single hearing or set specific limitations on filings. Instead, the court provided no alternative solutions or lesser sanctions before resorting to the most severe option. Because the court failed to consider or impose lesser, tailored sanctions that

directly addressed the alleged "offensive conduct," the dismissal order was unjust, excessive, and erroneous.

### j. This Court erred in dismissing Appellant's case because the court incorrectly applied the Four-Part Test for Death-Penalty Sanctions

89.    The court erroneously applied the four-part test for imposing death-penalty sanctions.  In fact, the trial court relied on no guiding legal principles before it decided to dismiss Appellant's case. (1st Supp. C.R. 520-521). A death-penalty sanction is one that effectively adjudicates the dispute without regard to the merits. TransAmerican Nat. Gas Corp. v. Powell, 811 S.W.2d 913, 918 (Tex. 1991); see also Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 575 (Tex. 2018). Such extreme sanctions should be reserved for exceptional cases where lesser sanctions would be inadequate. Cire v. Cummings, 134 S.W.3d 835, 840-41 (Tex. 2004); Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003); GTE Comms. Sys. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993). Courts must avoid "trial by sanctions" and ensure that extreme measures, such as dismissal or default judgment, are used only in cases of flagrant bad faith. Altesse Healthcare Solutions, 540 S.W.3d at 575. The court's ruling in this case does not meet the legal standard for death-penalty sanctions.

1. Lack of Direct Relationship Between Conduct and Sanction—Element #1

90.     The sanction imposed must be directly related to the alleged offensive conduct. Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 574 (Tex. 2018); Paradigm Oil, Inc. v. Retamco Oper., Inc., 372 S.W.3d 177, 184 (Tex. 2012); American Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006). Here, the court dismissed Appellant's case, yet the supposed basis for this sanction, nonpayment of social study fees (3 R.R at 5 l. 8-19) and some vague standard of abuse of the legal process (1st Supp. C.R. 520), has no direct relationship to the merits of Appellant's pleadings. Filing motions based on legal and factual grounds is not offensive conduct warranting dismissal. Moreover, a failure to pay for a social study does not invalidate Appellant's claims or render them without merit. The trial court fails to explain how Appellant allegedly abused the legal process. Thus, there is no direct relationship between Appellant's actions and the extreme sanction imposed, nor did the trial Court conduct an evidentiary hearing on the matter or explain the existence of any such relationship (1st Supp. C.R. 520; 2d Supp. C.R. 145, pp. 18–29; this period encompasses the start of the modification action through the final order of dismissal; no sanctions hearing was ever conducted).

2. Sanctions Were Excessive and Unnecessary—Element #2

91.     Sanctions must not be excessive; they must be no more severe than necessary to serve their purpose. Altesse Healthcare Solutions, 540 S.W.3d at 574;

Nath v. Texas Children's Hosp., 446 S.W.3d 359, 363 (Tex. 2014); Paradigm Oil, 372 S.W.3d at 187; Spohn Hosp., 104 S.W.3d at 882. Here, the trial court imposed the harshest possible sanction, dismissal, without first considering any lesser sanctions. (1st Supp. 520, the trial court does not consider lesser sanction in its order). If the court was concerned with managing its docket (2 R.R 9 l.23-25), it could have required Appellant to consolidate motions or schedule multiple issues for hearing on the same date. Similarly, if the court sought payment of social study fees, it could have explored alternative payment arrangements or imposed a lesser sanction such as a warning or an order compelling payment within a set time frame. The court, however, skipped all intermediate options and proceeded directly to dismissal, which is unjust and excessive.

92. Texas courts have set forth several factors for determining the appropriateness of a monetary sanction. See Low v. Henry, 221 S.W.3d 609, 620-21 & n.5 (Tex. 2007). Applying those factors here demonstrates that the sanction was wholly unjustified:

a) Good or bad faith, Nath, 446 S.W.3d at 371 n.29; Low, 221 S.W.3d at 620 n.5.:There was no finding of bad faith, nor did the record support such a conclusion.  All of Appellant's motions were filed on legal grounds supported by facts.
b) Degree of misconduct, Nath, 446 S.W.3d at 371 n.29; Low, 221 S.W.3d at 620 n.5. (c) :  There had been no finding of misconduct. Every filing by Appellant was properly grounded in law and fact and every order actually served and received by Appellant had been complied with.

c) History of sanctionable conduct, <u>Nath</u>, 446 S.W.3d at 371 n.29; <u>Low</u>, 221 S.W.3d at 620 n.5.: Appellant had never been sanctioned in this case.

d) Prejudice to the opposing party, . <u>Nath</u>, 446 S.W.3d at 371 n.29; <u>Low</u>, 221 S.W.3d at 620 n.9: Appellee never requested sanctions, nor did Appellee demonstrate any prejudice caused by Appellant's filings that was introduced into evidence.

e) The risk of discouraging the specific type of litigation involved. <u>Nath</u>, 446 S.W.3d at 371 n.29; <u>Low</u>, 221 S.W.3d at 620 n.5.: The court's dismissal order sets a dangerous precedent by effectively dissuading litigants from seeking enforcement of valid court orders. Appellant's filings were aimed at holding Appellee accountable for violating the terms of the 2020 Agreed Order, yet the court's ruling penalized Appellant rather than addressing Appellee's continued noncompliance. By limiting the number of motions it is willing to hear and imposing severe sanctions on a party attempting to enforce its rights, the court's decision undermines the judicial process and discourages future litigants from seeking legal redress. This contradicts the fundamental purpose of the judicial system, which is to provide a forum for resolving disputes and ensuring compliance with legally binding orders.

f) Financial Impact of Sanctions: Sanctions must account for the financial impact on the sanctioned party. <u>Nath v. Texas Children's Hosp.</u>, 446 S.W.3d 359, 371 n.29 (Tex. 2014); <u>Low v. Henry</u>, 221 S.W.3d 609, 620 n.5 (Tex. 2007). In this case, the court failed to consider a less severe but effective alternative to dismissal. Appellant had indicated his financial hardship and inability to pay the social study fees (2 R.R. at 7 l. 13-19), meaning that the possibility of the imposition of a monetary sanction would have acted as a significant deterrent. Instead of resorting to the harshest possible penalty, case dismissal, the court could have imposed a monetary penalty or devised an alternative resolution that encouraged compliance without depriving Appellant of his right to be heard. By failing to consider these factors and imposing an unnecessarily harsh sanction, the trial court's ruling was excessive and legally improper.

The Court did not and could not weigh these factors because no evidentiary hearing was conducted as aforementioned. Thus the imposition of sanctions was error.

### 3. Failure to Impose Lesser Sanction Before Dismissal—Element #3

93. The court's failure to consider or impose lesser sanctions before resorting to dismissal was erroneous and constitutes an abuse of discretion. A trial court must generally impose lesser sanctions before resorting to the most severe penalty of dismissal. Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992); see Cire v. Cummings, 134 S.W.3d 835, 840-41 (Tex. 2004). While a trial court is not required to exhaust every possible lesser sanction before imposing death-penalty sanctions, it must demonstrate that it considered and rejected such alternatives. Cire, 134 S.W.3d at 842. Here, the court failed to explore any lesser sanctions before dismissing Appellant's case. The court could have imposed community service, monetary fines, or issued an order requiring Appellant to satisfy the social study fee by a specific deadline before resorting to dismissal. None of these reasonable alternatives were considered. The court did not consider lesser sanctions (1st Supp. 520, the trial court does not consider lesser sanction in its order).

94. In cases involving egregious misconduct, a court may impose death-penalty sanctions without first applying lesser sanctions, but only if the record clearly demonstrates that the court considered and rejected lesser sanctions as inadequate. Cire v. Cummings, 134 S.W.3d 835, 842 (Tex. 2004); Altesse Healthcare Solutions, Inc. v. Wilson, 540 S.W.3d 570, 576 (Tex. 2018).

Additionally, the court must establish that the party's misconduct was so severe that it justifies a presumption that its claims or defenses lack merit. Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003); GTE Commc'ns Sys. v. Tanner, 856 S.W.2d 725, 729 (Tex. 1993).

95.     Here, the court failed to meet this standard. First, Appellant no misconduct occurred that would warrant sanctions, let alone death-penalty sanctions. Second, the record does not reflect that the court considered any lesser sanctions before imposing dismissal. Instead, the court made its decision summarily at the conclusion of the de novo hearing on Appellee's application for a protective order, without analyzing alternatives. (1st Supp. C.R. at 520) Additionally, Appellant's actions do not justify a presumption that his claims lack merit. To the contrary, the court's own ruling dissolving Appellee's protective order after Appellant filed the Notice of De Novo Hearing indicates that Appellant's filings were meritorious. (1st Supp. C.R. 520). Consequently, the imposition of death-penalty sanctions without considering lesser alternatives was improper and constitutes clear error.

96.     The court has the authority to impose sanctions for violations of pretrial orders; however, in this case, the imposition of sanctions was erroneous as no such violation occurred. A trial court has the authority to impose just and appropriate sanctions for violations of its pretrial orders. Taylor v. Taylor, 254

S.W.3d 527, 532 (Tex.App.—Houston [1st Dist.] 2008, no pet.); see Koslow's v. Mackie, 796 S.W.2d 700, 703-04 & n.1 (Tex.1990).

97.    For a party to be found in violation of a court order, the order must meet the following legal requirements: (1) it must be in writing and signed by the court; (2) it must be in effect at the time of the alleged violation; (3) the respondent must have been aware of the order; (4) the order must be reasonably specific; (5) the respondent must have violated the order; and (6) the respondent must have had the ability to comply. Ex Parte Chambers, 898 S.W.2d 257, 259 (Tex. 1995); Tex. Fam. Code Sec. 157.002(a), (b)(2); Ex Parte Rosser, 899 S.W.2d 382, 385 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding).  Texas law allows a party to plead the defense of inability to comply with an order. Tex. Fam. Code 157.008(c).

98.    Appellant explicitly informed the court at the conclusion of the de novo hearing on Appellee's application for a protective order that he lacked the financial means to pay for the social study fees. Appellant does not own property that could be sold to cover the fees, he had unsuccessfully attempted to borrow funds, and he had no known source at the time from which to obtain the money. (3 R.R. at 7 L. 13-19).

99.    Moreover, the court never transmitted any order to Appellant requiring payment of the social study fees. The only orders issued by the associate court on August 20, 21, and 22, 2024, concerned the dissolution of the temporary

restraining order and imposition of the 2020 Agreed Order as temporary orders, the scheduling of a status hearing and removal of the amicus attorney, none of which imposed or stated the terms of any obligation on Appellant to pay social study fees. (3 R.R at 6 l.16-25; 3 R.R. at 7 l.1-2; 1st Supp. C.R. 18–29, showing no indication in the docket sheet that Appellant was served with the order to pay social study fees between the initiation of the modification case and the final dismissal order).

100. Furthermore, the orders from the August 20, 2024 hearing were sent via regular email, rather than through the court's official e-service system. (3 R.R. 6 L. 6-15). Because the associate court failed to send the orders through the proper service channel, there is no verifiable record of what was transmitted or served. The associate court should have utilized the official court-email service to ensure proper delivery and confirmation of receipt.

101. Since Appellant never received any order requiring payment of social study fees, as the court never sent it via email, and was financially unable to pay, thus satisfying the affirmative defense of impossibility, there was no violation of any court order that could justify the dismissal of his case. Consequently, the trial court's imposition of sanctions lacks both legal and factual support and must be reversed.

## 4. Movant's Conduct Does Not Justify the Presumption That His Claims Lack Merit—Element #4

102.    The fourth prong of the test fails because Appellant never engaged in conduct that would justify the presumption that his claims lack merit. For death-penalty sanctions to be appropriate, the party's conduct must justify the presumption that its claims or defenses lack merit. Paradigm Oil, 372 S.W.3d at 184; Hamill v. Level, 917 S.W.2d 15, 16 (Tex.1996); TransAmerican, 811 S.W.2d at 918. Courts have upheld death-penalty sanctions only in cases where a party's actions demonstrate a clear abuse of the judicial process, such as deliberately destroying or withholding evidence. See Altesse Healthcare Solutions, 540 S.W.3d at 572 (holding that monetary sanctions exceeding ordinary death-penalty sanctions were unjustified because the defendant's noncompliance with a TRO did not indicate its claims and defenses lacked merit); Cire, 134 S.W.3d at 839 (death-penalty sanctions were warranted when the plaintiff intentionally destroyed audiotapes that were unfavorable to her claims).

103.    Appellant has engaged in no such conduct. He has not destroyed or withheld evidence, acted in bad faith, or otherwise engaged in any litigation misconduct that would justify the presumption that his claims lack merit. To the contrary, Appellant's claims have merit, as demonstrated by the dissolution of the protective order after the de novo hearing.   (3 R.R. at 8 L.4-24). Additionally, Appellee has a pending case for assault family violence, which was presented to

the court, further supporting the legitimacy of Appellant's claims (2 R.R. Pl. Ex. FX-1). The record does not support any finding that Appellant's filings were frivolous or abusive, and therefore, the imposition of death-penalty sanctions was improper.

**k. Court erred when it dismissed Appellant's case citing abusive filings/abuse of the legal process since a showing is required that a pleading, motion, or other paper was both groundless and filed in bad faith, for harassment, or with knowledge that it was false. Appellant has not committed any pleadings abuse, no evidence was entered to support such a claim and Appellant's filings were not sanctionable warranting dismissal.**

104. Appellant has the right to file motions seeking relief from the court as long as they are grounded in law and fact, which is entirely permissible. Durbin v. Culberson Cty., 132 S.W.3d 650, 656 (Tex. App.—El Paso 2004, no pet.); Elliott v. Elliott, 797 S.W.2d 388, 392 (Tex. App.—Austin 1990, no writ); Lindley v. Flores, 672 S.W.2d 612, 614 (Tex. App.—Corpus Christi 1984, no writ). The court may impose sanctions for pleadings abuse only when a party files groundless or frivolous pleadings, motions, or other papers. Sanctions under Texas Rule of Civil Procedure 13 require a showing that a pleading, motion, or other paper was both groundless and filed in bad faith, for harassment, or with knowledge that it was false. Nath v. Texas Children's Hosp., 446 S.W.3d 355, 362-63 (Tex. 2014). No such finding was made against Appellant after a hearing on the matter. (2d Supp.

C.R. 145, pp. 18–29; this period encompasses the start of the modification action through the final order of dismissal; no sanctions hearing was ever conducted).

105. Furthermore, Appellant has not violated Tex. Civ. Prac. Rem. Code §10.001. There has been no determination after hearing that (1) Appellant's pleadings were filed for an improper purpose, such as harassment, delay, or increasing litigation costs, (2) that Appellant's legal contentions were unwarranted by existing law or lacked a non-frivolous basis for modification or extension of the law, or (3) that Appellant's claims lacked evidentiary support. Tex. Civ. Prac. Rem. Code §10.001(1)-(3). Without such findings, there is no violation of Tex. Civ. Prac. Rem. Code §10.001. (2d Supp. C.R. 145, pp. 18–29; this period encompasses the start of the modification action through the final order of dismissal; no sanctions hearing was ever conducted).

106. Likewise, there is no violation under Texas Rule of Civil Procedure 13 or Tex. Civ. Prac. Rem. Code §9.011. No document filed by Appellant has been shown to have been submitted in bad faith, for harassment, unnecessary delay, or with knowledge of falsity. Each of Appellant's motions is based on legal and factual authority and is not groundless. Appellant's was not attempting to delay proceedings but to expedite them by seeking enforcement of Appellee's court-ordered obligations, specifically the production of the child. Thus, Appellant's

filings do not constitute sanctionable conduct under Texas Rule of Civil Procedure 13 or Chapter 9 of the Texas Civil Practice and Remedies Code.

107. The court's imposition of death-penalty sanctions effectively punishes Appellant for seeking legal relief, thereby denying Appellant access to the court, which is impermissible. Parties have the right to file motions when circumstances warrant and to seek legal redress. Even assuming, arguendo, that an order requiring payment of the social study fee was valid, Appellant never received such an order. Dismissing the case for nonpayment amounts to barring legal recourse to those unable to pay, an outcome contrary to the fundamental principles of justice. Also, the court should be held to the same standard as litigants regarding proper service of orders. Courts require litigants to use the court's e-service system to ensure proper notice and verification of document receipt and access. However, the associate court itself failed to utilize this system, leaving no way to confirm that an order was ever served on Appellant. Without such verification, the dismissal is fundamentally unjust and procedurally defective. Furthermore, without the court having conducted a hearing to determine the propriety of Appellant's filings the Court committed error when it dismissed Appellant's pleading merely because it "felt" as if they were frivolous as it stated in passing during the de novo protective order hearing. COURT: I'm going to find a solution to help you guys because one family can't take up 75 percent of the court's resources. (2 R.R at 9 l.23-25); MS.

FAWCETT: He's filing frivolous -- THE COURT: He's doing a good job of that, but that's okay. (2 R.R. at 19 l. 22-23); The Court calls my application for protective order friviolous without having heard evidence on the motion. The parties were there on a de novo hearing for a protective order; not to determine the propriety of Appellants filing's or whether they were abusive. (2 R.R. at 16 l.22-25) No evidence was entered on the matter to determine if Appellant's filings were abusive. Consequently, the trial court could not make a ruling that Appellant's filings were an abuse of the legal process. Such a ruling without a hearing and evidence is invalid.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests that this Court:

a) Vacate and reverse the order of dismissal in its entirety as it was erroneous, unjust, and not supported by law or fact.

b) Reinstate the case on the Court's docket in the same status as it was prior to dismissal, with all pending motions preserved as if the case had never been dismissed.

c) Grant any and all other relief to which Appellant may be entitled, in law or in equity.

Respectfully submitted,

By:

*CHRISTOPHER L. GRAHAM*

Christopher L. Graham

1801 N. Hampton Rd. #425 1175,

DeSoto, Texas 75115

Tel. (469)718-9974

clgsapcr@gmail.com

Pro Se

## WORD COUNT CERTIFICATE

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this appellate brief contains 8,877 words. This is a computer-generated document created in Microsoft Word. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

## CERTIFICATE OF SERVICE

I certify that on 6/11/2025 a true and correct copy of APPELLANT BRIEF was served to each person listed below by the method indicated.

TIFFANY FAWCETT

VIA E-SERVICE

378 Westview Terrace

Arlington, Texas 76013

tiffanykfawcett@gmail.com

Morgan Bridgewater

VIA E- SERVICE

Office of OAG

2201 Main Street Ste 1250

Dallas, Texas

CSD-Legal-413@oag.texas.gov

# APPENDIX

**Appendix Contents**

1) January 29, 2025 ruling

2) Appellant Application for Protective Order Tarrant County

3) Appellee Application for Protective Order

4) Hearing Requirement-- Tex. Civ. Prac. Rem. Code §§9.012(c) and 10.003

5) Requirements for Application for Ex Parte Protective Order -- Tex. Fam. Code Sec. 82.009

6) Requirements for Application for Protective Order For Child Subject to Continuing Jurisdiction-- Tex. Fam. Code Sec. 82.007



## 301ST DISTRICT COURT
## GEORGE L. ALLEN, SR. COURTS BUILDING
## 600 COMMERCE STREET
## DALLAS, TEXAS 75202-4606

Case No.  DF15-17201

IN THE INTEREST OF GRAHAM

### FINAL ORDER AFTER CONTESTED HEARING

Be it remembered that on the 28th day of January 2025, this case was set on the Court's docket.

Christopher Graham appeared in person pro se.
Tiffany Fawcett appeared in person pro se.

Mr. Graham's two motions regarding the Protective Order were denied and the case proceeded to hearing on his de novo appeal.

After hearing the evidence and testimony offered, the Court makes the following findings and orders.

The Court finds that the Protective Order granted by the Associate Judge was appropriate but is no longer necessary and it is hereby amended to expire today.

The Court finds that Mr. Graham's modification motion, contempt motions, summary judgment and all other pending motions and appeals should be dismissed for willful failure to follow court orders and abuse of the legal process.

The Court finds that the agreed final order entitled AGREED ORDER IN SUIT TO MODIFY PARENT-CHILD RELATIONSHIP signed November 23, 2020 is the controlling order with the following clarifications.

IT IS ORDERED, ADJUDGED AND DECREED by the Court that

1. Exchanges not taking place at school shall be at the Grand Prairie Police Department, 1525 Arkansas Lane, Grand Prairie, Texas 75052.

2. Any agreements to change the order shall be in writing (by email at email address listed in November 23, 2020 order) and must show a meeting of the minds.
3. If Mr. Graham elects to return the child to school on Monday morning after his possession period, such election shall be made in writing to Ms. Facwcett's email address in the November 23, 2020 order not less than 24 hours before the visit begins.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that all other requests for relief in this case are hereby dismissed.

SIGNED THIS THE ___29___ DAY JANUARY 2025.

JUDGE MARY BROWN
DISTRICT JUDGE
301ST DISTRICT COURT

| | |
|---|---|
| **NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA** | |

CAUSE NO: 231-754265-24 _____

FILED
TARRANT COUNTY
7/19/2024 4:14 PM
THOMAS A. WILDER
DISTRICT CLERK

C. GRAHAM                          §   IN THE _____ DISTRICT COURT
_____        §
**APPLICANT**                      §
VS.                                §
                                   §
TIFFANY FAWCETT AKA TIFFANY KHALIL §   OF  TARRANT           COUNTY, TEXAS
_____        §
**RESPONDENT**                     §

## Application for Protective Order

**1. Parties:**

CHRISTOPHER L. GRAHAM                    DALLAS
_____          _____
**Applicant**                            County of Residence

☐ *Mark this box if you are completing and filing this application on behalf of the Applicant.*

_____          _____
Name of Person Filing the Application    Title of Person Filing the Application

TIFFANY FAWCETT
_____
**Respondent**

Respondent's address for service:   378 WESTVIEW TERRACE, ARLINGTON, TEXAS 76013
                                    _____

**2. Reason(s) for Protective Order:** *(Mark all that apply)*

☑ The Respondent committed family violence, dating violence, or child abuse.

☐ The Respondent committed sexual assault or abuse, indecent assault, indecency with a child, compelling prostitution, stalking, or trafficking.

☐ The Respondent violated a Protective Order that was active at the time of the violation but has since expired or will expire in 30 days or less. A copy of the Order is *(Mark one)*

   ☐ attached.  ☐ not available now but will be filed before the hearing set for this Application.

**3. Describe Applicant's Relationship to the Respondent:** (Mark all that apply)

☐ Current or former spouses
☐ Current or former dating partners
☐ Are or were members of the same family or household
☑ Parents of the same child(ren)
☐ Relatives

☐ Parent or child of the Respondent
☐ Foster child or foster parent of the Respondent
☐ Applicant is dating or married to Respondent's current or former spouse or dating partner
☐ No relationship



**Page 1 of 14**

**4. Children Under Age 18 Who Need Protection:**

Name | Is Respondent the parent or guardian
--- | ---
a. R. GRAHAM | ☑ Yes  ☐ No
b. _____ | ☐ Yes  ☐ No
c. _____ | ☐ Yes  ☐ No
d. _____ | ☐ Yes  ☐ No

Mark all that apply:

☐ Other children are listed on a sheet attached to this Application.

☐ The children are or were members of the Applicant's family or household.

☐ The children have a court order that affects how and when they can visit their family or sets child support.

**5. Other Adults:** The Applicant requests protection for the following adults who are or were: members of the Applicant's family or household; or in a marital or dating relationship with the Applicant.

Name
a. CALVIN GRAHAM
b. _____

**6. Other Court Cases (other than criminal cases):** Are there other court cases involving the Applicant, Respondent, or children?

☑ Yes  ☐ No

(a) If "Yes," what kind of case and is the case active or complete?

SAPCR (complete)

(b) If "complete," (*Mark all that apply*):

☐ A copy of the final order of the other case is attached.
☑ A copy of the final order of the other case will be filed before the hearing on this Application.

(c) If the Texas Office of the Attorney General Child Support Division has been involved with a child support case: list the OAG case number for each open case, if known. Case Number: _____

**7. Family Violence or Other Criminal Case(s):** Has the Respondent ever been convicted of or placed on deferred adjudication community supervision for any crime under Title 5 or Title 6 of the Texas Penal Code? (See list of crimes at the end of the Instruction document)

☑ Yes  ☐ No  ☐ Unknown

If "Yes," what kind of crime:

F-1451024(conviction); F1571565  (assault of a family member w/ previous conviction; conditional dismissal received)

If the Respondent was convicted or placed on community supervision for a Title 5 crime, did the Court make a finding that the crime involved family violence?

☐ Yes ☐ No ☑ Unknown

Was the crime against a child listed in this application?

☐ Yes ☑ No ☐ Unknown

Have the Respondent's parental rights to a child listed in this application been terminated?

☐ Yes ☑ No ☐ Unknown

If Respondent's parental rights have been terminated, has the Respondent contacted or attempted to contact the child?

☐ Yes ☑ No ☐ Unknown

**8. Terms and Conditions of the Protective Order – Mark all terms and conditions that the Applicant wants the Court to include in the Temporary Ex Parte Order, if the Applicant is requesting one, and the final Protective Order.**

**The Applicant asks the Court to order the Respondent:** *(Mark all that apply)*

a. ☑ Not to commit family violence.

b. ☑ Not to commit further acts of sexual assault or abuse, indecent assault, stalking, or trafficking.

c. ☑ Not to communicate a threat through any person to any person who is listed in this application as a person seeking protection or who is a member of the Applicant's family or household.

d. ☑ Not to communicate in a threatening or harassing manner with any person who is listed in this application as a person seeking protection or who is a member of the Applicant's family or household.

e. ☑ Not to communicate or attempt to communicate in any manner with *(Mark all that apply)*:

☑ Applicant ☑ children listed in this application ☐ other Adults listed in this application

except through Applicant's attorney or other person named by the Court, namely:

_____

Please explain why the court should prohibit direct communication from the Respondent:
see the attachment 8e.

(If necessary, attach sheet with additional information)

f. ☑ Not go within __100__ yards of the: *(Mark all that apply)*
☑ Applicant ☑ children listed in this application ☑ other Adults listed in this application

g. ☐ Not go to or within __200__ yards of the residence, workplace, or school of the: *(Mark all that apply)*
☑ Applicant ☑ children listed in this application ☑ other Adults listed in this application.
Residence: _____
Workplace: _____
School: _____



h. ☐ Not go to or within _____ yards of the residence, child-care facility, or school of the children listed in this application, except as specifically authorized in a possession schedule or other order entered by the Court.

Residence: _____

Child-care facilities: _____

School: _____

i. ☑ Not to engage in conduct that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass any person who is listed in this application as a person seeking protection, or who is a member of the Applicant's family or household, including not tracking or monitoring the car or other property belonging to any person who is listed in this application as a person seeking protection, or who is a member of the Applicant's family or household, or by physically following or causing another to physically follow a person seeking protection or any member of the Applicant's family or household.

**The Applicant further asks the Court to:**

j. ☑ Suspend the Respondent's license to carry a handgun.*

k. ☑ Prohibit Respondent from possessing a firearm.*

l. ☑ Require the Respondent to complete a battering intervention and prevention program.

m. ☐ Prohibit the Respondent from taking, harming, threatening, or interfering with the care, custody, or control of the following pet, companion animal, or assistance animal: (describe the animal)

_____

n. ☑ Require the Respondent to do the following to prevent or reduce the likelihood of family violence or future harm to the Applicant or any person listed in this application as a person in need of protection. Requiring that any child visitation agreed to by Applicant for the benefit of Respondent that such exchange take place at the nearest police station nearest to Applicant's residence. At the of this application the nearest such local police station is the DeSoto Police Department 714 E Belt Line Rd, DeSoto, TX 75115

_____

*NOTE*: If the Respondent is a peace officer actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision, the court may not suspend the Respondent's license to carry a handgun or prohibit the Respondent from possessing a firearm.

**9. Property Orders:** (Complete this section only if the Applicant shares, owns, or leases a residence with the Respondent)

The Residence located at: N/A _____

(Mark one):  ☐ is jointly owned or leased by the Applicant and Respondent.

☐ is solely owned or leased by the Applicant.

☐ is solely owned or leased by the Respondent; and the Respondent is obligated to support the Applicant or a child in the Applicant's possession.

**The Applicant asks the Court to make these orders about the residence:** (Mark all that apply)

☐ Grant the Applicant exclusive use of the residence identified above, and order the Respondent to vacate the residence and its premises.

☐ Order a law enforcement officer: to go with the Applicant to the residence; to tell the Respondent that the Court has ordered the Respondent to vacate the residence; to provide protection to the Applicant while the Applicant takes possession of the residence or while the Respondent takes possession of the Respondent's personal property; and to arrest the Respondent if the Respondent refuses to leave in violation of the Order.

☐ Applicant requests exclusive use of the following property that the Applicant and Respondent jointly own or lease:

_____

_____ ;

☐ Order the Respondent not to damage, transfer, encumber, or otherwise dispose of any property jointly owned or leased by the parties, including removing or disabling any vehicle owned or possessed by the Applicant or jointly owned or possessed by the parties.

**10. ☐ Spousal Support Order** (Mark the box if the Applicant is married to the Respondent and would like spousal support)

**Applicant is married to the Respondent and requests the Court** to order the Respondent to pay spousal support.

**11. ☐ Rights to Mobile Phone Numbers, Associated Devices, and Accounts** (Mark the box if asking to separate or transfer the wireless telephone account)

The Applicant asks the Court to order that the wireless telephone numbers that are used primarily by the Applicant or a person listed in this application as a person in need of protection be separated from the Respondent's wireless telephone service account. The Applicant asks for sole use, possession, and control of the following wireless telephone numbers and associated mobile devices, including sole billing responsibility and sole ownership of the mobile devices and wireless telephone service account associated with the wireless telephone numbers.

The Applicant further asks the Court to order the Respondent to pay the costs associated with transferring the wireless service account to the Applicant and the outstanding balance on the account.

The following wireless telephone numbers and associated mobile devices are used by the Applicant or the children listed in this Application.

| N/A _____ | ☐ my phone number | ☐ child's phone number |
| _____ | ☐ my phone number | ☐ child's phone number |
| _____ | ☐ my phone number | ☐ child's phone number |

(Sheet may be attached for additional numbers)

The Applicant asks the Court to prohibit Respondent from closing, limiting access to, or otherwise tampering with the wireless telephone service account associated with aforementioned mobile phone numbers and associated mobile devices until this Court determines who is the primary user of the mobile phone numbers and devices. Applicant also asks the Court to order the Respondent's wireless telephone service provider not to disclosure the Applicant's or other persons in need of protection contact information to the Respondent, including any new telephone numbers assigned to the Applicant or other person in need of protection.

8

**12.** ☑ **Orders Related to Removal, Possession, and Support of Children** (Mark the box if asking for the removal, possession, or support of the children)

The Applicant and the Respondent are the parents or guardians of the following children:

R. Graham
_____

_____

**The Applicant asks the Court to enter the following orders with respect to the children:** *(Mark all that apply):*

☑ The Respondent must not remove children from the Applicant's possession or from their child-care facility or school, except as specifically authorized in a possession schedule or other order entered by the Court.

☑ The Respondent must not remove the children from the jurisdiction of the Court.

☐ An order establishing or modifying a schedule for the Respondent's possession of the children, subject to any terms and conditions necessary for the safety of the Applicant or the children.

☑ An order requiring the Respondent to pay child support in an amount set by the Court.

**13.** ☑ **Temporary Ex Parte Order** (Mark the box if requesting a temporary ex parte order)

Based on the information in the attached Affidavit or Declaration, the Applicant asks the Court to find that there is a clear and present danger of family violence, sexual assault or abuse, indecent assault, stalking, trafficking, or other harm to Applicant and/or a member of the family or household and issue a Temporary Ex Parte Order immediately without bond, notice, or hearing.

**13a.** ☐ **Temporary Ex Parte Order That Also Requires Respondent to Vacate Residence Immediately** (Mark the box if you are requesting that the temporary ex parte order also exclude Respondent from the shared residence)

> **NOTE:** *IF YOU MARK 13a, YOU MUST APPEAR FOR A HEARING BEFORE THE COURT CAN EXCLUDE OR REMOVE THE RESPONDENT FROM A SHARED RESIDENCE.*

The Applicant lives with the Respondent at:     N/A
_____

or resided there within the 30 days prior to the filing of this Application. The Respondent committed family violence against the Applicant, or a member of the family or household, as described in the Affidavit or Declaration attached, within 30 days prior to the filing of this Application. There is a clear and present danger that the Respondent is likely to commit family violence against the Applicant and/or a member of the family or household. The Applicant is available for a hearing to justify the issuance of an order excluding the Respondent from the residence. If the Court grants this request, the Applicant asks the Court to issue a Temporary Ex Parte Order that:

- Grants the Applicant exclusive use and possession of the residence and orders the Respondent to vacate the residence immediately and remain at least 200 yards away from the residence pending further Order of the Court.

- Directs the sheriff, constable, or chief of police to provide a law enforcement officer to accompany the Applicant to the residence; to inform the Respondent that the Court has ordered the Respondent to vacate the residence; and to protect the Applicant while the Applicant takes possession of the residence, or while the Applicant takes possession of the Applicant's necessary personal property if the Respondent refuses to vacate the residence.

**14.** ☑ **Keep Information Confidential** (Mark the box if you want your information to remain confidential)

The Applicant requests the Court to exclude the following information from the protective order: the mailing address, county of residence, and telephone number of the Applicant and any person listed in this application as a person in need of protection; and the address and telephone number of a place of employment, business, child-care facility, or school, if any, of the Applicant and any person listed in this application as a person in need of protection. The Applicant further asks the Court to order the clerk of the court to strike the aforementioned information from the public records of the Court and keep a confidential record of the information for use only by the Court or law enforcement for the purpose of entering the information required by Section 411.042(b)(6), Government Code, into the statewide law enforcement information system maintained by the Texas Department of Public Safety.

**WARNING:** A copy of this application will be served on the Respondent and made available for public inspection. Marking Box No.14 means that you are asking the judge to remove your address and telephone numbers from the final order so the public cannot see this information. If you are requesting confidentiality, DO NOT INCLUDE personal information in this application or any other form related to your request.

If the Applicant is requesting confidentiality, provide the information requested below:

The Applicant asks the Court to designate the following person to receive on Applicant's behalf all notices and documents filed with the Court, if related to this Application:

Name: C. Graham

Address: clgsapcr@gmail.com

**15. Citations and Notices**

The Applicant asks the Court to issue all citations and notices required by law for the application and any resultant order.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** the Applicant prays the Court issue the protective order as requested in this Application, and, if applicable, the Applicant further prays the Court issue a Temporary Ex Parte Order until a hearing can be held.



☑  I have read the entire Application and it is true and correct to the best of my knowledge.


/s/ C. Graham
_____
Applicant or Person filing on behalf of Applicant


Address and telephone number where Applicant or Person filing on behalf of Applicant may be contacted (*List another address/telephone if you want yours kept confidential*):

C. Graham
_____

469-718-9974; clgsapcr@gmail.com
_____



**11**

NOTICE: THIS
DOCUMENT CONTAINS
SENSITIVE DATA

**DECLARATION**

Use this form if you want your Date of Birth and Address to be public information (not confidential).

If you use the Declaration Form, a notary does not have to sign. Do NOT use the Affidavit form if you use this form.

County of DALLAS

State of Texas

My name is _____ Christopher Graham _____ ,
(First Middle Last)

my date of birth is ____confidential____ , and my address is
____confidential Texas USA____

(Street)          (City)          (State)     (Zip Code)          (Country)

I declare under penalty of perjury that the foregoing is true and correct.

Executed in _____Dallas_____ County, State of _____Texas_____

day of __,__ __10__ (Month) __2,024__ (Year).

_____ (Declarant Signature).

1. My relationship with Respondent is: we share a child together

2. Describe the most **recent time** the Respondent hurt or threatened to hurt you, including any conduct involving sexual assault, stalking, or trafficking:
See Unsworn affidavit attached for complete details. On 7/5/2024 when I arrived at Respondent's house to pick up my duagther, Respondent becase loud and violent and created a disturbance, drawing the attention of the neighbors She was angry over my rules regarding my daughter's cell phone privileges. As I moved to assist my daughter with h r things, Respondent got between us, took a swing at me and thne pushed by down the stairs in front of her house Fortunately, I was able to maintain my balance and I did not call. Respondent called the police.

   a. In what county did this happen? Tarrant
   b. On what date did this happen? _____07/05/2024_____
   c. Was a weapon involved?  ☐ Yes  ☑ No   If yes, what kind?

   d. Does Respondent possess or have access to firearms?  ☑ Yes  ☐ No
   e. Were any of the children present?  ☑ Yes  ☐ No   If yes, who?
   Reign Graham
   f. Did anyone call the police?  ☑ Yes  ☐ No   If yes, what happened?
   Police determined Tifffany Fawcett, Respondent committed an assault against me.
   g. Were you injured?  ☐ Yes  ☑ No   If yes, describe your injuries:
   I was not injured since I was able to maintain my balance to avoid falling down the stairs after she pushed me.

   h. Did you seek medical care?  ☐ Yes  ☑ No



77

3. Has the Respondent threatened or hurt you *before*?  ☑ Yes  ☐ No

   If so, describe below how the Respondent threatened or hurt you, including date(s) if possible.
   see attached unsworn declaration for more details).  She has been convicted of assualt against me before in Dallas
   in case F1451024.  and she received a conditional dismissal of a second assault case against me in F15771565.
   She has put a knife to my neck while I was sleeping, lacerated my finger with a knife, pushed me into a dresser
   causing an open wound to my back.  She threw a glass drinking jug at my head causing a laceration to my head.
   Since the final custody order in the SAPCR was put into place she has made repeated threats which are detailed
   in the attached unsworn declaration which goes into more detail).

   a. Were weapons ever involved?  ☑ Yes  ☐ No   If yes, what kind?
      knifes, glass objects

   b. Were the children present?  ☑ Yes  ☐ No   If yes, who?
      Reign Graham

   c. Did anyone report the conduct to the police?  ☑ Yes  ☐ No

   d. Were you injured?  ☑ Yes  ☐ No   If yes, describe your injuries:
      Explained above. These incidents happened several years ago when the respondent was living in my residenc
      before I left the relationship. The most recent incident occured during a normal pickup of my daughter
      pursuant to the child custody order.

   e. Did you seek medical care?  ☑ Yes  ☐ No

4. Has the Respondent ever been convicted of family violence?  ☑ Yes  ☐ No

   If yes, list when and in which county and state the conviction(s) occurred:
      Dallas, F1451024 (conviction; Dallas F15771565 (conditional dismissal).

5. Has the Respondent ever been convicted or placed on deferred adjudication community supervision for
   any of the following:

| | Yes | No | Unknown |
|---|---|---|---|
| Trafficking of Persons | ☐ | ☐ | ☑ |
| Continuous Trafficking of Persons | ☐ | ☐ | ☑ |
| Sexual Assault | ☐ | ☐ | ☑ |
| Indecent Assault | ☐ | ☐ | ☑ |
| Aggravated Sexual Assault | ☐ | ☐ | ☑ |
| Stalking | ☐ | ☐ | ☑ |
| Compelling Prostitution | ☐ | ☐ | ☑ |

   If yes, list when and in which county and state the conviction(s) occurred:



6. Are you requesting exclusive possession of a residence and to have the Respondent excluded from the residence?  ☐ Yes ☑ No
   a. What is the location of the residence? _____
   b. Do you currently reside at the residence or have resided there within the last 30 days?
      ☐ Yes ☑ No
   c. Please describe the facts and circumstances that require the Respondent to be excluded from the residence:
      I live in a separate residence _____
      _____
      _____
      _____

► *C. Graham*
_____
Applicant signs here

A CERTIFIED COPY
ATTEST: 11/12/24
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS
BY: _____
DEPUTY
LAURA NUNEZ

79

NO. _____

| | | | |
|---|---|---|---|
| C. GRAHAM | § | IN THE _____ DISTRICT COURT OF |
| | § | |
| V. | § | |
| | § | |
| TIFFANY FAWCETT AKA TIFFANY KHALIL | § | TARRANT COUNTY, TEXAS |

## <u>UNSWORN DECLARATION IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER</u>

BEFORE ME, the undersigned authority, on this day personally appeared Christopher L. Graham, who swore on oath that the following facts are true: "My name is Christopher L. Graham. I am over 18 years of age, of sound mind, and fully competent to make this unsworn declaration. I have personal knowledge of the facts stated herein and they are all true and correct.

1. I am requesting the issuance of a Temporary Ex Parte Order without bond, notice, or hearing, due to the clear and present danger of family violence posed by the Respondent. This request is supported by both her history of assault and her recent actions and threats. I and the Respondent are the parents of child Reign Graham.

2. The Respondent has a documented history of family violence, with two prior assault cases against me in Dallas county: Case F1451024, which resulted in a conviction, and Case F15771565, which was conditionally dismissed. A copy of the relevant court documents have been included and attached to the filing of this application for protective order. This violent behavior has continued during our child custody exchanges. Conversations with the Respondent consistently devolve into yelling, screaming, and cursing whenever there is a disagreement. In nearly every communication, she threatens me with severe harm, stating intentions such as, "I'll see to it that they don't find your body," "I have no problem 'offing' you and I can flee to Cuba," and "I'm going to see to it that you get fucked up, I've got people who can do it."

3. On July 5, 2024, the situation escalated to physical violence. When I arrived at the Respondent's residence to pick up our daughter in Arlington, Texas the Respondent became extremely angry and created a disturbance, drawing the attention of neighbors. The conflict arose over our daughter's cell phone privileges. As I moved to assist my daughter with her things, the Respondent, in a fit of rage, interjected herself between us, took a swing at me, and then pushed me down the stairs in front of her townhouse. Fortunately, I was able to maintain my balance and did not fall. After this assault, she called the police, who investigated and determined that the



Respondent had indeed assaulted me. Following this incident, I received multiple threatening calls from the Respondent, saying, "I'm going to fuck you up, you know you've fucked up now."

4. The Respondent's history of violence, her pattern of aggressive and threatening communication, the recent physical assault, and her subsequent threats clearly indicate an ongoing and significant danger of future family violence. To protect myself and ensure the safety of my family, it is imperative that the court issues the requested Temporary Ex Parte Order immediately.

UNSWORN DECLARATION/JURAT

"My name is CHRISTOPHER L. GRAHAM; and my address is P.O. Box 226265, Dallas, Texas 75222. I declare under penalty of perjury that the foregoing information contained in the UNSWORN DECLARATION IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER is true and correct. Executed in Dallas County, State of Texas, on the 10th day of July, 2024

*C. Graham*
Declarant



VOL 880 PAGE 327

## CASE No. F-1451024-H
### INCIDENT No./TRN: 9176507092

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT |
| | § | |
| V. | § | COURT #1 |
| | § | |
| TIFFANY KAY KHALIL | § | DALLAS COUNTY, TEXAS |
| | § | |
| STATE ID No.: TX05887317 | § | |

## JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| | | |
|---|---|---|
| Judge Presiding: **Hon. Andrew Kupper** | Date Judgment Entered: | **7/18/2014** |
| Attorney for State: **Bryan Mitchell** | Attorney for Defendant: | **Franl Odueze** |

Offense for which Defendant Convicted:
**ASSAULT**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | **22.01 Penal Code** |

Date of Offense:
**1/2/2014**

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
|---|---|---|
| **CLASS A MISDEMEANOR** | **GUILTY** | **N/A** |

Terms of Plea Bargain:
**90 DAYS COUNTY JAIL**

| Plea to 1st Enhancement Paragraph: | **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| Date Sentence Imposed: **7/18/2014** | Date Sentence to Commence: **7/18/2014** |
|---|---|

| Punishment and Place of Confinement: | **90 DAYS COUNTY JAIL** |
|---|---|

THIS SENTENCE SHALL RUN **CONCURRENTLY.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A** .

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| $ **N/A** | $ **247.00** | $ **N/A** (see below) | ☐ AGENCY/AGENT ☐ VICTIM |

☐ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part hereof.

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A** .

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
|---|---|
| | From **1/2/2014** to **1/31/2014**   From **7/16/2014** to **7/18/2014**   From    to |
| Time Credited: | From    to    From    to    From    to |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. |
| | **N/A** DAYS   NOTES: **N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in Dallas County, Texas. The State appeared by her District Attorney.

Counsel / Waiver of Counsel (select one)

☒ Defendant appeared in person with Counsel.

Judgment of Conviction by Court Waiver of Jury Trial 073107

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

<u>Punishment Options  (select one)</u>

☐ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, State Jail Division, TDCJ. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☒ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of Dallas County, Texas on the date the sentence is to commence. Defendant shall be confined in the Dallas County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the Dallas County District Clerk Felony Collections Department. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the Dallas County District Clerk Felony Collections Department. Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

<u>Execution / Suspension of Sentence  (select one)</u>

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

<u>**Furthermore, the following special findings or orders apply:**</u>

**Signed and entered on July 18, 2014**

X _____
Andrew Kupper
JUDGE PRESIDING

**Andrew J. Kupper**
**Judge Presiding**
**By Assignment**

Clerk: CYNTHIA S BAILEY

*Thumbprint Certification attached.

Judgment of Conviction by Court Waiver of Jury Trial 073107

**18**

## JUDGMENT
## CERTIFICATE OF THUMBPRINT

THE STATE OF TEXAS                    CAUSE NO. F 1451024-H

VS.                        _____CRIMINAL_____ DISTRICT COURT  #1

_Tiffany Fawcett_                    DALLAS COUNTY, TEXAS

**RIGHT THUMB**                    DEFENDANT'S _R_ HAND

THIS IS TO CERTIFY THAT THE FINGERPRINTS ABOVE ARE THE ABOVE-NAMED DEFENDANT'S FINGERPRINTS TAKEN AT THE TIME OF DISPOSITION OF THE ABOVE STYLED AND NUMBERED CAUSE.

DONE IN COURT THIS _18_ DAY OF _July_ , 20_14_ .

_____ #586
**BAILIFF/DEPUTY SHERIFF**

*INDICATE HERE IF PRINT OTHER THAN DEFENDANT'S RIGHT THUMBPRINT IS PLACED IN BOX:

_____ LEFT THUMBPRINT          _____ LEFT/RIGHT INDEX FINGER

_____ OTHER, _____

SIGNED AND ENTERED ON THIS _18_ DAY OF _July_ , 20_14_ .

_____
**PRESIDING JUDGE**
Andrew J. Kupper
Judge Presiding
By Assignment

84

The State of Texas vs. TIFFANY KAY FAWCETT

DOB: 9/28/1984     Sex: Female     Race: White

**CDC1**



SID No. TX05887317

AIS No. 2553871

GJ Witness: Det. R. Alva, #6699

| C | Offense | LD | Statute | Agency | TRN | TRS | NCIC Code |
|---|---------|-----|---------|--------|-----|-----|-----------|
| 1 | - ASSAULT FAMILY/HOUSEHOLD MEMBER W/PREV CONV | F3 | PC 22.01(b)(2)(A) | TXDPD0000 | 9248816266 | A001 | 13990075 |

## INDICTMENT NO.: F1571565

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS:

The Grand Jury of Dallas County, State of Texas, duly organized at the July Term, A.D., 2015 of the Criminal District Court No. 5 for said County, upon its oath do present in and to said Court at said term,

That **TIFFANY KAY FAWCETT**, hereinafter called Defendant, **on or about 28th day of July, 2015** in the County of Dallas, State of Texas, did unlawfully, then and there, intentionally, knowingly and recklessly cause bodily injury to another, namely:  CHRISTOPHER GRAHAM, hereinafter called complainant, a member of defendant's family and household and with whom the said defendant had a dating relationship, by STRIKING COMPLAINANT WITH A GLASS AND A HOLE PUNCH DEVICE THROWN BY THE DEFENDANT,

And further, prior to the commission of the aforesaid offense alleged in the first paragraph above, said defendant had been previously duly and legally convicted of the following assaultive offense or assaultive offenses against a person who was a member of the said defendant's family and household and with whom the said defendant had a dating relationship and such offense or offenses constitute the type of offense or offenses that render the offense alleged in the first paragraph above a felony of the third degree under Section 22.01(b)(2) of the Texas Penal Code:

In Cause Number F1451024-QH in the CRIMINAL DISTRICT COURT NO. 1 of Dallas County, Texas, the said defendant was convicted of ASSAULT FAMILY VIOLENCE on or about the 18TH day of JULY, A.D., 2014,

Against the peace and dignity of the State.

**Susan Hawk**
**Criminal District Attorney**
.Dallas County, Texas

_____
Foreman of the Grand Jury

FILED
15 NOV 10 AM 10: 31
FELICIA PIRE
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

Page 1 of 1

Service Number- 174041-2015

| STATE OF TEXAS | AFFIDAVIT FOR ARREST WARRANT | COUNTY OF DALLAS |

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant who, after being duly sworn by me, on oath stated: My name is _____ and I am a peace officer of the City of Dallas, Dallas County, Texas. I, the affiant, have good reason and do believe that on or about 07/28/15, one FAWCETT, TIFFANY, KAY (AKA KHALIL,TIFFANY) W/F 09/28/84 did then and there in the City of Dallas, DALLAS County, Texas commit the offense of ASSAULT FV PRIOR CONVICTION , a violation of Section 22.01 of the Penal Code, a F/3.

Affiant's belief is based upon the following facts and information which Affiant received from:
☐ Affiant's personal investigation of this alleged offense.
☒ S. SMITH #7899, a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose information Affiant believes to be credible.

BASED UPON INFORMATION RECEIVED FROM COMPLAINANT GRAHAM, CHRISTOPHER, LAUREN, IT IS BELIEVED THAT ON 07/28/15, SUSPECT FAWCETT, TIFFANY, KAY (AKA KHALIL,TIFFANY) COMMITTED THE OFFENSE OF ASSAULT FV PRIOR CONVICTION 22.01 F/3 AGAINST THE COMPLAINANT. THE OFFENSE OCCURRED AT 6875 EASTRIDGE DR #2084 IN DALLAS, DALLAS COUNTY, TEXAS. THE FACTS OF THIS OFFENSE ARE AS FOLLOWS:

ON 7/28/2015 AT APPROXIMATELY 5:45 P.M. R/O'S D. WATKINS #10914 AND R. ANDERSON #6501 RESPONDED TO A MAJOR DISTURBANCE CALL FROM THE POLICE DISPATCHER INVOLVING THE SUSPECT AT 6785 EASTRIDGE DR. #2084. WHEN R/O'S ARRIVED THE COMP STATED THAT THE SUSPECT, HIS EXGIRLFRIEND EXROOMATE, HAD COME OVER TO HIS APARTMENT. THE SUSPECT WAS THERE TO COLLECT THE REST OF HER THINGS TO MOVE OUT OF THE LOCATION. THE SUSPECT LOOKED AT THE COMP'S PHONE AND BEGAN ACCUSING HIM OF TALKING TO ANOTHER GIRL ON THE PHONE. THE SUSPECT DEMANDED FOR THE COMP TO CALL THE GIRL BACK AND THE COMP REFUSED. THE SUSPECT BEGAN TO THROW BOARD GAME BOXES AROUND IN THE LIVING ROOM. THE COMP RECORDED PARTS OF THE FIGHT ON HIS CELL PHONE. THE COMP THEN WENT INTO HIS OFFICE AREA OF THE APARTMENT AND THE SUSPECT FOLLOWED HIM THERE. THE SUSPECT THEN PICKED UP A KNIFE AND A HAMMER AND DEMANDED FOR THE COMP TO CALL THE GIRL BACK ON THE PHONE. THE SUSPECT PUT THE KNIFE DOWN AND BUMPED THE COMP ON THE RIGHT ELBOW WITH THE HAMMER. THE SUSPECT THEN PICKED UP A STAPLER AND A THREE HOLE PUNCH AND THREW THEM AT THE COMP. THE SUSPECT THEN PICKED UP A LARGE DRINKING GLASS AND THREW IT AT THE COMP STRIKING THE COMP IN THE HEAD, BREAKING THE GLASS AND CAUSING A LARGE CUT ON THE TOP OF HIS HEAD ON THE LEFT SIDE. THE COMP THEN CALLED THE POLICE AND THE SUSPECT FLED ON FOOT NORTH BOUND ON EASTRIDGE DR. THE COMP WAS NOT AWARE OF WHERE THE SUSPECT WAS LIVING OR IF SHE HAD ANY FRIENDS IN THE AREA THAT SHE COULD BE STAYING WITH. THE COMP WAS BLEEDING FROM HIS HEAD AND HAD BLOOD ON HIS FACE AND SHIRT. THERE WERE BLOODY TOWELS IN THE HALLWAY AND THE OFFICE, AND BLOOD SPOTS IN THE BATHROOM WHERE THE COMP HAD TRIED TO COVER HIS WOUNDS. DFR #37 RESPONDED TO THE SCENE AND TREATED THE COMP AT THE SCENE. PHOTOS WERE TAKEN OF THE SCENE AND THE COMP'S INJURIES. A FAMILY VIOLENCE PACKET AND LETHALITY ASSESSMENT WERE COMPLETED. DURING THE LETHALITY ASSESSMENT THE COMP STATED THAT HE AND THE SUSPECT HAD A DAUGHTER TOGETHER AND THAT THE SUSPECT HAD PREVIOUSLY THREATENED TO KILL THE COMP AND THE DAUGHTER. THE COMP CAME TO THE DVU 09/04/15 AND CONFIRMED THE OFFENSE AND STATED THAT HE HAD A VIDEO OF THE ASSAULT HE WOULD GET. IT WAS FOUND THE SUSP HAD A PRIOR FV CONVICTION AGAINST THE SAME COMP (UNDER KHALIL, TIFFANY) ON AGGRAVATED ASSAULT FV ON F-1451024 CONVICTION DATE 07/18/14 AND RECEIVED 90 DAYS CONFINEMENT AND $2000 FINE.

_____
AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME on the
_____ day of _____ SEP 0 8 2015

WHEREFORE, Affiant requests that an arrest warrant be issued for the above accused individual in accordance with the law.

_____
MAGISTRATE, IN AND FOR DALLAS COUNTY, TEXAS

MAGISTRATE'S DETERMINATION OF PROBABLE CAUSE

On this the _____ day of _____ SEP 0 8 2015 20___
I hereby acknowledge that I have examined the foregoing affidavit and have determined that probable cause exists for the issuance an arrest warrant for the individual accused therein.

_____
MAGISTRATE, IN AND FOR DALLAS COUNTY, TEXAS

No. F15-71565

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL |
| v. | § | DISTRICT COURT No. 1 |
| TIFFANY FAWCETT | § | DALLAS COUNTY, TEXAS |

## CONDITIONAL DISMISSAL AGREEMENT

The undersigned defendant hereby agrees to (1) complete an Anger Management class; (2) complete a Parenting class; and (3) continue counseling as instructed. Upon successful completion of these conditions and if the defendant commits no new offenses, the District Attorney's Office will dismiss the above-captioned case. If the undersigned defendant fails to meet one of the requirements of this agreement, the defendant will be prosecuted for this offense. The Defendant has <u>one month</u> from today's date to complete the conditions listed herein.

Date: 5/5/2016

_____
Defendant's Signature

_____
Defendant's Attorney

Approved by:

_____
Assistant District Attorney

16 MAY -5 PH 3:53



| | | |
|---|---|---|
| **NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA** | **CAUSE NO:** DF-15-17201 | FILED |

Tiffany Fawcett
_____
**APPLICANT**

VS.

Christopher Lauren Graham
_____
**RESPONDENT**

§ IN THE 301st
§
§
§
§ OF Dallas
§

2024 OCT 15 PM 1:56

FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Dakaue Bradford
COUNTY, TEXAS

# Application for Protective Order

## 1. Parties:

Tiffany Fawcett
_____
**Applicant**

Tarrant
_____
County of Residence

☐ *Mark this box if you are completing and filing this application on behalf of the Applicant.*

_____
Name of Person Filing the Application

_____
Title of Person Filing the Application

Christopher Lauren Graham
_____
**Respondent**

Respondent's address for service: 1104 Rio Verde Dr. Desoto, Texas 75115
_____

## 2. Reason(s) for Protective Order: *(Mark all that apply)*

☑ The Respondent committed family violence, dating violence, or child abuse.

☑ The Respondent committed sexual assault or abuse, indecent assault, indecency with a child, compelling prostitution, stalking, or trafficking.

☐ The Respondent violated a Protective Order that was active at the time of the violation but has since expired or will expire in 30 days or less. A copy of the Order is *(Mark one)*

☐ attached. ☐ not available now but will be filed before the hearing set for this Application.

## 3. Describe Applicant's Relationship to the Respondent: *(Mark all that apply)*

☐ Current or former spouses
☑ Current or former dating partners
☑ Are or were members of the same family or household
☑ Parents of the same child(ren)
☐ Relatives

☐ Parent or child of the Respondent
☐ Foster child or foster parent of the Respondent
☐ Applicant is dating or married to Respondent's current or former spouse or dating partner
☐ No relationship

**4. Children Under Age 18 Who Need Protection:**

| | Name | Is Respondent the parent or guardian |
|---|---|---|
| a. | Reign Graham | ☑ Yes ☐ No |
| b. | Malik Khalil | ☐ Yes ☑ No |
| c. | _____ | ☐ Yes ☐ No |
| d. | _____ | ☐ Yes ☐ No |

Mark all that apply:

☐ Other children are listed on a sheet attached to this Application.

☑ The children are or were members of the Applicant's family or household.

☑ The children have a court order that affects how and when they can visit their family or sets child support.

**5. Other Adults:** The Applicant requests protection for the following adults who are or were: members of the Applicant's family or household; or in a marital or dating relationship with the Applicant.

Name

a. _____

b. _____

**6. Other Court Cases (other than criminal cases):** Are there other court cases involving the Applicant, Respondent, or children?

☑ Yes ☐ No

(a) If "Yes," what kind of case and is the case active or complete?

Civil Case No. DC-19-20142

(b) If "complete," (*Mark all that apply*):

☐ A copy of the final order of the other case is attached.

☐ A copy of the final order of the other case will be filed before the hearing on this Application.

(c) If the Texas Office of the Attorney General Child Support Division has been involved with a child support case: list the OAG case number for each open case, if known. Case Number: _____

**7. Family Violence or Other Criminal Case(s):** Has the Respondent ever been convicted of or placed on deferred adjudication community supervision for any crime under Title 5 or Title 6 of the Texas Penal Code? (See list of crimes at the end of the Instruction document)

☐ Yes ☐ No ☑ Unknown

If "Yes," what kind of crime:

_____

If the Respondent was convicted or placed on community supervision for a Title 5 crime, did the Court make a finding that the crime involved family violence?

☐ Yes          ☐ No          ☑ Unknown

Was the crime against a child listed in this application?

☐ Yes          ☐ No          ☑ Unknown

Have the Respondent's parental rights to a child listed in this application been terminated?

☐ Yes          ☑ No          ☐ Unknown

If Respondent's parental rights have been terminated, has the Respondent contacted or attempted to contact the child?

☐ Yes          ☑ No          ☐ Unknown

## 8. Terms and Conditions of the Protective Order – Mark all terms and conditions that the Applicant wants the Court to include in the Temporary Ex Parte Order, if the Applicant is requesting one, and the final Protective Order.

**The Applicant asks the Court to order the Respondent:** *(Mark all that apply)*

a. ☑ Not to commit family violence.

b. ☑ Not to commit further acts of sexual assault or abuse, indecent assault, stalking, or trafficking.

c. ☑ Not to communicate a threat through any person to any person who is listed in this application as a person seeking protection or who is a member of the Applicant's family or household.

d. ☑ Not to communicate in a threatening or harassing manner with any person who is listed in this application as a person seeking protection or who is a member of the Applicant's family or household.

e. ☑ Not to communicate or attempt to communicate in any manner with *(Mark all that apply)*:

   ☑ Applicant     ☑ children listed in this application     ☐ other Adults listed in this application

   except through Applicant's attorney or other person named by the Court, namely:
   the court approved app called APP CLOSE, officers of the court or by certified mail or constable for service
   Please explain why the court should prohibit direct communication from the Respondent:
   To prevent the respondent from threatening, harassing, assulting or causing harm to me and the children listed
   (If necessary, attach sheet with additional information)

f. ☑ Not go within __950__ yards of the: *(Mark all that apply)*
   ☑ Applicant     ☑ children listed in this application     ☐ other Adults listed in this application

g. ☑ Not go to or within __950__ yards of the residence, workplace, or school of the: *(Mark all that apply)*
   ☑ Applicant     ☑ children listed in this application     ☐ other Adults listed in this application.
   Residence: 378 Westview Terrace Arlington, Texas 76013
   Workplace: N/A
   School: Swift Elem. at 1101 S Fielder Rd. Arlington, Tx. 76013 ACCHS at 4900 W Arkansas Ln. Tx76016

h. ☐ Not go to or within _____ yards of the residence, child-care facility, or school of the children listed in this application, except as specifically authorized in a possession schedule or other order entered by the Court.

Residence: _____

Child-care facilities: _____

School: _____

i. ☑ Not to engage in conduct that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass any person who is listed in this application as a person seeking protection, or who is a member of the Applicant's family or household, including not tracking or monitoring the car or other property belonging to any person who is listed in this application as a person seeking protection, or who is a member of the Applicant's family or household, or by physically following or causing another to physically follow a person seeking protection or any member of the Applicant's family or household.

**The Applicant further asks the Court to:**

j. ☑ Suspend the Respondent's license to carry a handgun.*

k. ☑ Prohibit Respondent from possessing a firearm.*

l. ☑ Require the Respondent to complete a battering intervention and prevention program.

m. ☐ Prohibit the Respondent from taking, harming, threatening, or interfering with the care, custody, or control of the following pet, companion animal, or assistance animal: (describe the animal)

_____

n. ☑ Require the Respondent to do the following to prevent or reduce the likelihood of family violence or future harm to the Applicant or any person listed in this application as a person in need of protection.

Take away his right to secure a passport for Reign Graham and his right to contact or communicate with

either childs school in any way that would harass or cause mental or emotional harm to anyone

named in this order or the schools staff.

_____

*NOTE: If the Respondent is a peace officer actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision, the court may not suspend the Respondent's license to carry a handgun or prohibit the Respondent from possessing a firearm.

**9. Property Orders:** (Complete this section **only** if the Applicant shares, owns, or leases a residence with the Respondent)

The Residence located at: _____

(Mark one):     ☐ is jointly owned or leased by the Applicant and Respondent.

                       ☐ is solely owned or leased by the Applicant.

                       ☐ is solely owned or leased by the Respondent; and the Respondent is obligated to support the Applicant or a child in the Applicant's possession.

**The Applicant asks the Court to make these orders about the residence:** (Mark all that apply)

☐ Grant the Applicant exclusive use of the residence identified above, and order the Respondent to vacate the residence and its premises.

Page 4 of 14

☐ Order a law enforcement officer: to go with the Applicant to the residence; to tell the Respondent that the Court has ordered the Respondent to vacate the residence; to provide protection to the Applicant while the Applicant takes possession of the residence or while the Respondent takes possession of the Respondent's personal property; and to arrest the Respondent if the Respondent refuses to leave in violation of the Order.

☐ Applicant requests exclusive use of the following property that the Applicant and Respondent jointly own or lease:

_____

_____ ;

☐ Order the Respondent not to damage, transfer, encumber, or otherwise dispose of any property jointly owned or leased by the parties, including removing or disabling any vehicle owned or possessed by the Applicant or jointly owned or possessed by the parties.

**10.** ☐ **Spousal Support Order** (Mark the box if the Applicant is married to the Respondent and would like spousal support)

**Applicant is married to the Respondent and requests the Court** to order the Respondent to pay spousal support.

**11.** ☐ **Rights to Mobile Phone Numbers, Associated Devices, and Accounts** (Mark the box if asking to separate or transfer the wireless telephone account)

The Applicant asks the Court to order that the wireless telephone numbers that are used primarily by the Applicant or a person listed in this application as a person in need of protection be separated from the Respondent's wireless telephone service account. The Applicant asks for sole use, possession, and control of the following wireless telephone numbers and associated mobile devices, including sole billing responsibility and sole ownership of the mobile devices and wireless telephone service account associated with the wireless telephone numbers.

The Applicant further asks the Court to order the Respondent to pay the costs associated with transferring the wireless service account to the Applicant and the outstanding balance on the account.

The following wireless telephone numbers and associated mobile devices are used by the Applicant or the children listed in this Application.

_____  ☐ my phone number   ☐ child's phone number

_____  ☐ my phone number   ☐ child's phone number

_____  ☐ my phone number   ☐ child's phone number

(Sheet may be attached for additional numbers)

The Applicant asks the Court to prohibit Respondent from closing, limiting access to, or otherwise tampering with the wireless telephone service account associated with aforementioned mobile phone numbers and associated mobile devices until this Court determines who is the primary user of the mobile phone numbers and devices. Applicant also asks the Court to order the Respondent's wireless telephone service provider not to disclosure the Applicant's or other persons in need of protection contact information to the Respondent, including any new telephone numbers assigned to the Applicant or other person in need of protection.

**12.** ☑ **Orders Related to Removal, Possession, and Support of Children** (Mark the box if asking for the removal, possession, or support of the children)

The Applicant and the Respondent are the parents or guardians of the following children:

Reign Graham
_____

_____

_____

**The Applicant asks the Court to enter the following orders with respect to the children:** *(Mark all that apply)*:

☑ The Respondent must not remove children from the Applicant's possession or from their child-care facility or school, except as specifically authorized in a possession schedule or other order entered by the Court.

☑ The Respondent must not remove the children from the jurisdiction of the Court.

☑ An order establishing or modifying a schedule for the Respondent's possession of the children, subject to any terms and conditions necessary for the safety of the Applicant or the children.

☑ An order requiring the Respondent to pay child support in an amount set by the Court.

**13.** ☑ **Temporary Ex Parte Order** (Mark the box if requesting a temporary ex parte order)

Based on the information in the attached Affidavit or Declaration, the Applicant asks the Court to find that there is a clear and present danger of family violence, sexual assault or abuse, indecent assault, stalking, trafficking, or other harm to Applicant and/or a member of the family or household and issue a Temporary Ex Parte Order immediately without bond, notice, or hearing.

**13a.** ☐ **Temporary Ex Parte Order That Also Requires Respondent to Vacate Residence Immediately** (Mark the box if you are requesting that the temporary ex parte order also exclude Respondent from the shared residence)

> **NOTE:** *IF YOU MARK 13a, YOU MUST APPEAR FOR A HEARING BEFORE THE COURT CAN EXCLUDE OR REMOVE THE RESPONDENT FROM A SHARED RESIDENCE.*

The Applicant lives with the Respondent at: _____

_____

or resided there within the 30 days prior to the filing of this Application. The Respondent committed family violence against the Applicant, or a member of the family or household, as described in the Affidavit or Declaration attached, within 30 days prior to the filing of this Application. There is a clear and present danger that the Respondent is likely to commit family violence against the Applicant and/or a member of the family or household. The Applicant is available for a hearing to justify the issuance of an order excluding the Respondent from the residence. If the Court grants this request, the Applicant asks the Court to issue a Temporary Ex Parte Order that:

- Grants the Applicant exclusive use and possession of the residence and orders the Respondent to vacate the residence immediately and remain at least 200 yards away from the residence pending further Order of the Court.

- Directs the sheriff, constable, or chief of police to provide a law enforcement officer to accompany the Applicant to the residence; to inform the Respondent that the Court has ordered the Respondent to vacate the residence; and to protect the Applicant while the Applicant takes possession of the residence, or while the Applicant takes possession of the Applicant's necessary personal property if the Respondent refuses to vacate the residence.

**14.** ☐ **Keep Information Confidential** (Mark the box if you want your information to remain confidential)

The Applicant requests the Court to exclude the following information from the protective order: the mailing address, county of residence, and telephone number of the Applicant and any person listed in this application as a person in need of protection; and the address and telephone number of a place of employment, business, child-care facility, or school, if any, of the Applicant and any person listed in this application as a person in need of protection. The Applicant further asks the Court to order the clerk of the court to strike the aforementioned information from the public records of the Court and keep a confidential record of the information for use only by the Court or law enforcement for the purpose of entering the information required by Section 411.042(b)(6), Government Code, into the statewide law enforcement information system maintained by the Texas Department of Public Safety.

**WARNING:** A copy of this application will be served on the Respondent and made available for public inspection. Marking Box No.14 means that you are asking the judge to remove your address and telephone numbers from the final order so the public cannot see this information. If you are requesting confidentiality, DO NOT INCLUDE personal information in this application or any other form related to your request.

If the Applicant is requesting confidentiality, provide the information requested below:

The Applicant asks the Court to designate the following person to receive on Applicant's behalf all notices and documents filed with the Court, if related to this Application:

Name: _____

Address: _____

### 15. Citations and Notices

The Applicant asks the Court to issue all citations and notices required by law for the application and any resultant order.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, the Applicant prays the Court issue the protective order as requested in this Application, and, if applicable, the Applicant further prays the Court issue a Temporary Ex Parte Order until a hearing can be held.

☑  I have read the entire Application and it is true and correct to the best of my knowledge.

_____
Applicant or Person filing on behalf of Applicant

Address and telephone number where Applicant or Person filing on behalf of Applicant may be contacted _(List another address/telephone if you want yours kept confidential)_:

378 Westview Terrace Arlignton, Texas 76013
_____

682-400-6773
_____

┌─────────────────────────┐
│ **NOTICE: THIS** │
│ **DOCUMENT CONTAINS** │
│ **SENSITIVE DATA** │
└─────────────────────────┘

┌─────────────────────────────────────────┐
│ Use this form if <u>YOU WANT</u> your <u>Date of Birth</u> │
│ and <u>Address</u> to <u>REMAIN CONFIDENTIAL.</u> │
│ │
│ <u>You will need to have it signed BY A NOTARY.</u> │
│ │
│ Do <u>NOT</u> use the DECLARATION form if you │
│ use this form. │
└─────────────────────────────────────────┘

## AFFIDAVIT

County of **Dallas**

State of Texas

My name is **Tiffany Kay Fawcett** (First Middle Last). I am **40** years old and otherwise competent to make this Affidavit. The information and events described in this Affidavit are true and correct.

1.  My relationship with Respondent is: he is my ex-boyfriend and the father of my 11 year old daughter Reign

2.  Describe the most **recent time** the Respondent hurt or threatened to hurt you, including any conduct involving sexual assault, stalking, or trafficking:
    July 5th, 2024 Chris came to my house & assulted me several times. He then threatened me so that I would mislead the police & he would not suffer any consequences. Our daughter Reign was also assulted when I fell back onto her after Chris rushed me with his body and grabbed at Reign. Reign, Malik and myself have all suffered a lot emotionally and psychologically since the assault due to harassment of people hired by Chris and because of how Chris has tried to use the legal system to bull and harass us.

    a.  In what county did this happen? Tarrant

    b.  On what date did this happen? 10/15/2024

    c.  Was a weapon involved? ☐ Yes ☑ No If yes, what kind?

    d.  Does Respondent possess or have access to firearms? ☑ Yes ☐ No

    e.  Were any of the children present? ☑ Yes ☐ No If yes, who?
        Reign Graham, Malik Khalil

    f.  Did anyone call the police? ☑ Yes ☐ No If yes, what happened?
        A citation was issued

    g.  Were you injured? ☑ Yes ☐ No If yes, describe your injuries:
        My body was sore from being pushed around and from falling backwards. I had a panic attack because of the assault. I have since suffered from mental and emotional stress. I have had nightmares and difficulty sleeping. Malik and Reign have also suffered from stress and difficulty sleeping. Reign suffered many injuries while in Chris' care from 07/05/2024-08/20/2024 including sexual abuse.

    h.  Did you seek medical care? ☐ Yes ☑ No

3.  Has the Respondent threatened or hurt you **before**? ☑ Yes ☐ No
    If so, describe below how the Respondent threatened or hurt you, including date(s) if possible.
    Chris used to lock me in the closet of our home for extended periods of time, withhold food from me & Reign saying that we had not earned the right to eat that day. He would turn the mattress over in the middle of the night while I was asleep in the bed with Reign in my arms when she was younger all because he wanted me to wake up & give him attention or go to the store & buy something. He would hit me with whatever was closest to him or throw things especially plates of hot food at my head. He once threw a hot iron at me hitting me, burning my face & hands. I still have a scar. He would threaten to crash the car with me & Reign inside, driving recklessly until I begged him to stop.

a. Were weapons ever involved? ☐ Yes ☑ No  If yes, what kind? _____

b. Were the children present? ☑ Yes ☐ No  If yes, who? _____
   Reign Graham

c. Did anyone report the conduct to the police? ☐ Yes ☐ No

d. Were you injured? ☑ Yes ☐ No  If yes, describe your injuries:
   Bruises, burns to my face and body from an Iron, PTSD, trouble sleeping, nightmares, emotional distress and
   long-term phycological distress. Twisted ankle, miscarriages due to physical abuse, malnourishment & stress.

e. Did you seek medical care? ☑ Yes ☐ No

4. Has the Respondent ever been convicted of family violence? ☐ Yes ☑ No
   If yes, list when and in which county and state the conviction(s) occurred:
   Not because of me but I am unsure of charges brought by anyone else

5. Has the Respondent ever been convicted or placed on deferred adjudication community supervision for any of the following:

| | | | |
|---|---|---|---|
| Trafficking of Persons | ☐ Yes | ☐ No | ☑ Unknown |
| Continuous Trafficking of Persons | ☐ Yes | ☐ No | ☑ Unknown |
| Sexual Assault | ☐ Yes | ☐ No | ☑ Unknown |
| Indecent Assault | ☐ Yes | ☐ No | ☑ Unknown |
| Aggravated Sexual Assault | ☐ Yes | ☐ No | ☑ Unknown |
| Stalking | ☐ Yes | ☐ No | ☑ Unknown |
| Compelling Prostitution | ☐ Yes | ☐ No | ☑ Unknown |

If yes, list when and in which county and state the conviction(s) occurred:

6. Are you requesting exclusive possession of a residence and to have the Respondent excluded from the residence? ☐ Yes ☑ No

a. What is the location of the residence? _____

b. Do you currently reside at the residence or have resided there within the last 30 days?
   ☐ Yes ☐ No

c. Please describe the facts and circumstances that require the Respondent to be excluded from the residence:

**32**

On ___/___/___, the Applicant _____ personally appeared before me, the undersigned notary. After being sworn, the Applicant stated that the Applicant is qualified to make this oath, that the Applicant has read the foregoing Application and Affidavit, that the Applicant has personal knowledge of the facts asserted, and the facts asserted are true and to the best of the Applicant's knowledge and belief. Subscribed and sworn before me on ___/___/___.

▶ _____
Applicant signs here

▶ _____
**Notary Public in and for the State of Texas**

My Commission expires: _____

<table>
<tr><td>

```
┌─────────────────────────┐
│      NOTICE: THIS       │
│   DOCUMENT CONTAINS     │
│    SENSITIVE DATA       │
└─────────────────────────┘
```

</td><td>**DECLARATION**</td><td>

Use this form if you want your Date of Birth and Address to be public information (not confidential).

If you use the Declaration Form, a notary does not have to sign. Do NOT use the Affidavit form if you use this form.

</td></tr>
</table>

County of __Dallas__

State of Texas

My name is _____ Tiffany Kay Fawcett _____ ,
(First Middle Last)

my date of birth is ___09/28/1984___ , and my address is
___378 Weatview Terrace Arlington, Texas 76013___          ___United States of America___
(Street)          (City)          (State)     (Zip Code)          (Country)

I declare under penalty of perjury that the foregoing is true and correct.
Executed in _____ County, State of _____
day of ___ , _____ (Month) _____ (Year).

_____ (Declarant Signature).

1.  My relationship with Respondent is:  __my ex-boyfriend and the father of my 11 yr old daughter Reign__

2.  Describe the most **recent time** the Respondent hurt or threatened to hurt you, including any conduct involving sexual assault, stalking, or trafficking:
    July 5th, 2024 Chris came to my house & assulted me several times. He then threatened me so that I would mislead the police & he would not suffer any consequences. Our daughter Reign was also assulted when I fell back onto her after Chris rushed me with his body and grabbed at Reign. Reign, Malik and myself have all suffered a lot emotionally and psychologically since the assault due to harassment of people hired by Chris and because of how Chris has tried to use the legal system to bull and harass us.

    a.  In what county did this happen?  Tarrant County
    b.  On what date did this happen?  ___10/15/2024___
    c.  Was a weapon involved?  ☐ Yes  ☑ No  If yes, what kind?

    d.  Does Respondent possess or have access to firearms?  ☑ Yes  ☐ No
    e.  Were any of the children present?  ☑ Yes  ☐ No  If yes, who?
        Reign Graham, Malik Khalil
    f.  Did anyone call the police?  ☑ Yes  ☐ No  If yes, what happened?
        a citation was issued
    g.  Were you injured?  ☑ Yes  ☐ No  If yes, describe your injuries:
        My body was sore from being pushed around and from falling backwards. I had a panic attack because of the assault. I have since suffered from mental and emotional stress. I have had nightmares and difficulty sleeping. Malik and Reign have also suffered from stress and difficulty sleeping. Reign suffered many injuries while in C 07/05/2024-08/20/2024 including sexual abuse.

    h.  Did you seek medical care?  ☐ Yes  ☑ No

3. Has the Respondent threatened or hurt you *before*?　☑ Yes　☐ No

   If so, describe below how the Respondent threatened or hurt you, including date(s) if possible.

   Chris used to lock me in the closet of our home for extended periods of time, withhold food from me & Reign saying that we had not earned the right to eat that day. He would turn the mattress over in the middle of the night while I was asleep in the bed with Reign in my arms when she was younger all because he wanted me to wake up & give him attention or go to the store & buy something. He would hit me with whatever was closest to him or throw things especially plates of hot food at my head. He once threw a hot iron at me hitting me, burning my face & hands. I still have a scar. He would threaten to crash the car with me & Reign inside, driving recklessly until I begged him to stop.

   a. Were weapons ever involved?　☐ Yes　☑ No　If yes, what kind?

   b. Were the children present?　☑ Yes　☐ No　If yes, who?

   　Reign Graham

   c. Did anyone report the conduct to the police?　☐ Yes　☑ No

   d. Were you injured?　☑ Yes　☐ No　If yes, describe your injuries:

   　Bruises, burns to my face and body from an Iron, PTSD, trouble sleeping, nightmares, emotional distress and long-term phycological distress. Twisted ankle, miscarriages due to physical abuse, malnourishment & stress.

   e. Did you seek medical care?　☐ Yes　☑ No

4. Has the Respondent ever been convicted of family violence?　☐ Yes　☑ No

   If yes, list when and in which county and state the conviction(s) occurred:

5. Has the Respondent ever been convicted or placed on deferred adjudication community supervision for any of the following:

| | Yes | No | Unknown |
|---|---|---|---|
| Trafficking of Persons | ☐ | ☐ | ☑ |
| Continuous Trafficking of Persons | ☐ | ☐ | ☑ |
| Sexual Assault | ☐ | ☐ | ☑ |
| Indecent Assault | ☐ | ☐ | ☑ |
| Aggravated Sexual Assault | ☐ | ☐ | ☑ |
| Stalking | ☐ | ☐ | ☑ |
| Compelling Prostitution | ☐ | ☐ | ☑ |

If yes, list when and in which county and state the conviction(s) occurred:

6. Are you requesting exclusive possession of a residence and to have the Respondent excluded from the residence? ☐ Yes ☑ No

   a. What is the location of the residence? _____

   b. Do you currently reside at the residence or have resided there within the last 30 days?
      ☐ Yes ☐ No

   c. Please describe the facts and circumstances that require the Respondent to be excluded from the residence:

   _____

   _____

   _____

   _____

▶ _____

Applicant signs here

## Exhibit Index for Case No. DF-15-17201

**Exhibit A-** Doctor's excuse showing who accompanied Reign to appointments

**Exhibit B-** Email showing Chris was informed and responded in acknowledgement

**Exhibit C-** Vitamin D levels when Reign was returned on 08/20/2024

**Exhibit D-** Email to Chris from me expressing concern that Reign did not have her prescription Vitamin D

**Exhibit E-** Lab results showing extremely low Vitamin D levels 04/25/2024

**Exhibit F-** Notes from Doctors appointments for injuries sustained in Chris' care prior to being returned to mother on 08/20/2024

**Exhibit G-** Chris' expressed desire in court filing from 09/07/2024 to obtain a passport for Reign. (Page 2, Section 7)

**Exhibit H-** Doctors/ Hospital Notes of similar injury sustained in Chris' care from May 2022. Showing mom accompanied Reign and issues with Vitamin D levels.

Exhibit I- Photos from 08/20/2024 showing bruising, dead skin build-up and severely matted hair from abuse and neglect suffered while in Chris' care.

Exhibit J- Letter and bill waiver from Trichologist/ Salon owner for services rendered in attempt made to save Reign's hair

Exhibit K- Psychologically abusive text messages between Reign and Chris telling her not to respond to her mother's attempts to contact her

Exhibit L- Reign's screen name, Bio and signup date of July 08,2024 for Discord.

Exhibit M- Reigns' expressed fear of physical abuse by dad

Exhibit N- Chris' emotional and phycological abuse of Reign by telling her things to try and disparage her image of her mom and her relationship with her mom

Exhibit O- Reign expressing depression and her desire to commit suicide. Dad telling Reign about the ongoing court case causing Reign emotional instability and irreparable harm. Reigns suicide attempt (page 2) and unsupervised access to potentially harmful medication.

Exhibit P- Reign again expressing desire to commit suicide

Exhibit Q- Reign talking more about suicide

Exhibit R- Reigns self-diagnosed anxiety and depression

Exhibit S- Reign having trouble sleeping and more unsafe access to medication.

Exhibit T- Reigns Gmail account/ google search, note date

Exhibit U- Reign showing signs of depression and exposure to suicide online

Exhibit V- Lengthy calls with strangers online

Exhibit W- Concerning knowledge of sexual things

Exhibit X- References made to "Dad" by one of the people grooming her online

Exhibit Y- One or more of the males she is talking to romantically online knows which school she attended while she was with Dad. And a mixture of other alarming sexual conversations with men and others online.

~~Exhibit Z- Some but not all of the matted hair that had to be cut from Reigns head due to the severe matting.~~

~~Exhibit 2-USB thumb drive containing ring doorbell video of process server Chris hired committing a crime and violating my privacy by putting her cell phone to the glass of my front door to try and video inside my~~

home. Also, interview with Notary Public Chris contracted with in an attempt to commit fraud by having Desoto Police officers and my landlord served with counterfeit subpoenas that had not been filed with any court or signed by any judge. Showing a pattern of harassment, manipulation, abuse of the legal system, the judicial process and a bold and brazen direct lack of respect for this court.

**Exhibit 3- Email from my Landlord Greg Coughenour about feeling harassed, threatened and embarrassed by Chris.**

**Exhibit 4- Counterfeit Subpoena served to one of my landlords Greg Coughenour, Desoto Police Officers Sean Smith and Emmanuel Gonzalez**

## APPENDIX 4

Tex. Civ. Prac. Rem. Code. Sec. 9.012.  VIOLATION;  SANCTION.  (a)  At the trial of the action or at any hearing inquiring into the facts and law of the action, after reasonable notice to the parties, the court may on its own motion, or shall on the motion of any party to the action, determine if a pleading has been signed in violation of any one of the standards prescribed by Section 9.011.

(b)  In making its determination of whether a pleading has been signed in violation of any one of the standards prescribed by Section 9.011, the court shall take into account:

(1)  the multiplicity of parties;

(2)  the complexity of the claims and defenses;

(3)  the length of time available to the party to investigate and conduct discovery;  and

(4)  affidavits, depositions, and any other relevant matter.

(c)  If the court determines that a pleading has been signed in violation of any one of the standards prescribed by Section 9.011, the court shall, not earlier than 90 days after the date of the determination, at the trial or hearing or at a separate hearing following reasonable notice to the offending party, impose an appropriate sanction on the signatory, a represented party, or both.


Tex. Civ. Prac. Rem. Code. Sec. 10.003.  NOTICE AND OPPORTUNITY TO RESPOND.  The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations.

**APPENDIX 5**

Tex. Family Code Sec. 82.009. APPLICATION FOR TEMPORARY EX PARTE ORDER. (a) An application that requests the issuance of a temporary ex parte order under Chapter 83 must:

(1) contain a detailed description of the facts and circumstances concerning the alleged family violence and the need for the immediate protective order; and

(2) be signed by each applicant under an oath that the facts and circumstances contained in the application are true to the best knowledge and belief of each applicant.

(b) For purposes of this section, a statement signed under oath by a child is valid if the statement otherwise complies with this chapter.

**APPENDIX 6**

Sec. 82.007.  APPLICATION FILED FOR CHILD SUBJECT TO CONTINUING JURISDICTION.  An application that requests a protective order for a child who is subject to the continuing exclusive jurisdiction of a court under Title 5 or alleges that a child who is subject to the continuing exclusive jurisdiction of a court under Title 5 has committed family violence must include:

(1)  a copy of each court order affecting the conservatorship, support, and possession of or access to the child;  or

(2)  a statement that the orders affecting the child are unavailable to the applicant and that a copy of the orders will be filed with the court before the hearing on the application.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 101907787
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellant Brief
Status as of 6/11/2025 4:04 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Tiffany Fawcett | | tiffanykfawcett@gmail.com | 6/11/2025 3:58:57 PM | SENT |
| Morgan Birdgewatter | | CSD-Legal-413@oag.texas.gov | 6/11/2025 3:58:57 PM | SENT |